**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GERALD GREEN,
*Defendant-Appellant*.

No. 10-50519

D.C. No.
2:08-cr-00059-
GW-1

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

PATRICIA GREEN,
*Defendant-Appellant*,

JEFFREY F. ALLEN,
*Movant*.

No. 10-50524

D.C. No.
2:08-cr-00059-
GW-2

OPINION

Appeals from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted
January 9, 2013—Pasadena, California

Filed July 11, 2013

Before: Alex Kozinski, Chief Judge, M. Margaret
McKeown and Milan D. Smith, Jr., Circuit Judges.

Opinion by Chief Judge Kozinski

**SUMMARY**[*]

**Criminal Law**

The panel affirmed a restitution order in a case in which the defendants claimed that the district court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), when it ordered them to pay restitution without a jury's finding that there was an identifiable victim who suffered a pecuniary loss.

The panel held that *Southern Union Co. v. United States*, 132 S. Ct. 2344 (2012), which held that *Apprendi* applies to the fact-finding need to trigger criminal fines, is not clearly irreconcilable with this court's precedent holding that *Apprendi* does not apply to restitution orders.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Harold J. Krent (argued), Chicago-Kent College of Law, Chicago, Illinois; Marilyn E. Bednarski, Kaye, McLane & Bednarski, LLP, Pasadena, California, for Defendants-Appellants.

Scott A. C. Meisler (argued), Criminal Division, Appellate Section, Lanny A. Breuer, Assistant Attorney General, John D. Buretta, Acting Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C.; André Birotte, Jr., United States Attorney, Los Angeles, California, for Plaintiff-Appellee.

Steve Cochran, Katten Muchin Rosenman, LLP, Los Angeles, California, for Movant Jeffrey F. Allen.

**OPINION**

KOZINSKI, Chief Judge:

Forget life and liberty. This appeal concerns another precious thing we take from criminal defendants: their money.

Defendants Gerald and Patricia Green claim the district court violated *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), when it ordered them to pay restitution without a jury's finding that there was "an identifiable victim or victims" who suffered a "pecuniary loss"—findings required to trigger restitution under the Mandatory Victims Restitution Act. Though our caselaw holds that *Apprendi* doesn't apply to restitution orders, the Greens invite us to distinguish our

cases or else overrule them in light of the Supreme Court's recent decision in *Southern Union Co.* v. *United States*, 132 S. Ct. 2344 (2012).

### Facts

Gerald and Patricia Green sure knew how to put on a show. Movie industry veterans, the husband-and-wife team won a slew of contracts from the Tourism Authority of Thailand to run the Bangkok International Film Festival and to direct other promotional projects. The film festival, the largest of the contracts, flourished during the Greens' four years at the helm, generating large profits—$140 million by one marketing firm's estimates—and ranking among the top 15 film festivals in the world. More than 1600 journalists attended the events in 2006, when one industry insider predicted the festival "will become the Cannes Film Festival of the East within a year or two."

The Greens looked to be on their way to silver-screen success, but there was a dark secret that would get in the way: The Greens had secured their lucrative contracts thanks, at least in part, to $1.8 million in payments to the governor of Thailand's Tourism Authority. The Greens sometimes paid the governor directly, other times through the governor's daughter or one of the governor's friends. In all, the illicit payments amounted to roughly 13 percent of the total value of the Greens' contracts.

In 2006, a confidential informant alerted the FBI to these payments, leading to a year-long investigation and a 22-count indictment on Foreign Corrupt Practices Act (FCPA), money laundering, conspiracy and tax charges. The Greens were convicted by a jury. At sentencing, the district court imposed

six months' imprisonment, three years' supervised release and $250,000 in restitution, for which Gerald and Patricia are jointly and severally liable.

The Greens' appeal concerns only the restitution.

## Discussion

## I.  Restitution's Triggers

To impose restitution under the Mandatory Victims Restitution Act (MVRA), there must be a showing that "an identifiable victim or victims has suffered a physical injury or pecuniary loss."  18 U.S.C. § 3663A(c)(1)(B).[1]  The district judge found there was a victim and that "[t]echnically . . . there [was] a loss in terms of the bribery figure amount."[2] So did the Presentence Investigation Report.  But the jury never had a chance to make these findings, as there was no special verdict.  Nor do the convictions necessarily imply a victim or a loss.  For example, the FCPA jury instructions allowed for a conviction if the jury found the Greens had acted "corruptly" in making a payment to a foreign official "for the purpose of . . . securing any improper advantage."  As the Greens argue, the FCPA convictions would be "consistent

_____

[1] The parties dispute whether restitution was ordered under the MVRA or the Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663. But both statutes require a finding that there was a victim who suffered a loss, so the *Apprendi* question is in play either way.

[2] The Greens didn't raise an *Apprendi* objection to these findings or the restitution order.  The government argues we should review for plain error.  We decline to do so because the legal issues in this case fall within the exceptions to plain error review described by *United States* v. *Saavedra-Velazquez*, 578 F.3d 1103, 1106 (9th Cir. 2009).

with findings that the payments were investments" or "bribes drawn from the Greens' own profits." Nor do the Greens' other convictions require finding a victim or a pecuniary loss.[3]   Because the findings triggering restitution weren't made by the jury, we must decide whether *Apprendi* applies.

## II. *Apprendi*'s Application to Restitution

*Apprendi* held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely* v. *Washington*, 542 U.S. 296, 303 (2004) (emphasis omitted). *Apprendi* applies to the fact-finding needed to trigger capital punishment, *Ring* v. *Arizona*, 536 U.S. 584, 609 (2002), and criminal fines, *Southern Union*, 132 S. Ct. at 2357, but not the fact-finding needed to make concurrent sentences consecutive, *Oregon* v. *Ice*, 555 U.S. 160, 164 (2009).

While the Supreme Court has yet to hold whether *Apprendi* applies to restitution, it has said in dictum that "[i]ntruding *Apprendi*'s rule into" decisions to impose "statutorily prescribed fines and orders of restitution" would "cut the rule loose from its moorings." *Id.* at 171–72. That's some indication the Court would not apply *Apprendi* to

---

[3] Patricia Green's convictions for false subscription of two tax returns do necessarily imply a pecuniary loss to a victim—the federal government.  But the prosecution elected not to seek restitution for these convictions.

restitution, although the recent *Southern Union* decision declined to follow this dictum, at least as it concerned criminal fines. 132 S. Ct. at 2352 n.5 ("[O]ur statement in *Ice* was unnecessary to the judgment and is not binding.").

Our own court, however, has categorically held that *Apprendi* and its progeny—*Blakely* and *United States* v. *Booker*, 543 U.S. 220 (2005)—don't apply to restitution. In *United States* v. *Bussell*, 414 F.3d 1048, 1060 (9th Cir. 2005), we held that "the district court's orders of restitution and costs" under the VWPA "are unaffected by the changes worked by *Booker*." *See also United States* v. *DeGeorge*, 380 F.3d 1203, 1221 (9th Cir. 2004) (VWPA restitution "is unaffected by *Blakely*"); *United States* v. *Gordon*, 393 F.3d 1044, 1051 n.2 (9th Cir. 2004) (defendant's "*Blakely* argument is foreclosed by our recent decision in *United States* v. *DeGeorge*"). Under the existing law of the circuit, then, defendants' *Apprendi* claim must fail.

Defendants nonetheless advance two reasons for breaking with precedent:

## A.  The "Trigger" Argument

The Greens say our cases have rejected *Apprendi*'s application to determinations of the *amount* of restitution, not to determinations of *whether* restitution is triggered at all. As a result, they insist, we can apply *Apprendi* to the trigger determination without running afoul of our caselaw. At oral argument the Greens theorized a regime under which *Apprendi* would apply to the determination of the trigger but not the amount.

We are not persuaded.  First, this approach contravenes the categorical nature of our statements that restitution is "unaffected" by *Apprendi*.  *See* page 7 *supra*.  These categorical statements control even though the cases from which they issued didn't specifically address the trigger argument.  A panel may adopt a categorical rule as circuit law without explicitly rejecting every conceivable counter-argument.  We further hesitate to adopt the trigger argument because the Greens can't cite any case—state or federal—that has accepted it, and because the two circuits that considered it, rejected it.  *See United States* v. *Milkiewicz*, 470 F.3d 390, 403 (1st Cir. 2006); *United States* v. *Reifler*, 446 F.3d 65, 115–18 (2d Cir. 2006).

Finally, applying *Apprendi* to the determination of the trigger but not the determination of the amount would result in unacceptable cognitive dissonance.  If *Apprendi* covers the determination whether there are any victims at all, shouldn't it also cover the determination whether there's one victim who suffered a $1000 loss as opposed to 1000 victims who suffered a combined $1,000,000 loss?  It's hard to justify *Apprendi* protections for the determination of the first victim but not the 999 to follow, each of which would increase the amount of restitution imposed upon the defendant.  And if we treat each victim-determination as a separate trigger, we're effectively applying *Apprendi* to the determination of the amount.  That's not so much distinguishing our precedent as overruling it.

## B. *Southern Union* and the *Miller* v. *Gammie* Standard

The Greens next urge us to overrule our caselaw in light of the Supreme Court's recent decision in *Southern Union*, where a gas company was charged with violating the

Resource Conservation and Recovery Act (RCRA), which provides for a maximum criminal fine of $50,000 per day of violation. 132 S. Ct. at 2349. The indictment alleged the company had violated RCRA for a period of 762 days, but the jury was instructed that it could convict if it found even a single day's violation. *Id.* And convict the jury did. *Id.* At sentencing, the court calculated a "maximum potential fine of $38.1 million"—$50,000 x 762 days—"from which it imposed a fine of $6 million and a 'community service obligatio[n]' of $12 million." *Id.* Defendant objected that it had been convicted of just one day's violation, so any fact resulting in a fine over the daily maximum had to be found by a jury. *Id.* The Supreme Court agreed, applying *Apprendi* to criminal fines. *Id.* at 2349, 2357.

*Southern Union* provides reason to believe *Apprendi* might apply to restitution. As the Court held: "In stating *Apprendi*'s rule, we have never distinguished one form of punishment from another. Instead, our decisions broadly prohibit judicial factfinding that increases maximum criminal 'sentence[s],' 'penalties,' or 'punishment[s]'—terms that each undeniably embrace fines." *Id.* at 2351. The Greens say that "by applying *Apprendi* to criminal fines, *Southern Union* strongly signals that *Apprendi* applies to criminal restitution as well." But "strong[] signals" aren't enough. For a three-judge panel to overrule circuit precedent, the intervening case must "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are *clearly irreconcilable*." *Miller* v. *Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (emphasis added). *Southern Union* doesn't cross that threshold. Even if it chips away at the theory behind our restitution cases, it's not "clearly irreconcilable" with our holdings that restitution is "unaffected" by *Apprendi*.

First, the obvious: *Southern Union* deals with criminal fines, not restitution. It's far from "clear[]"—*Miller*'s term—that a rule governing one would govern the other. Indeed, it's not even clear that restitution's a form of punishment. We've held in some contexts that "restitution under the MVRA is punishment." *United States* v. *Dubose*, 146 F.3d 1141, 1145 (9th Cir. 1998); *see United States* v. *Ballek*, 170 F.3d 871, 876 (9th Cir. 1999). But in other contexts, we've held it's not. *See United States* v. *Phillips*, 704 F.3d 754, 771 (9th Cir. 2012) ("[F]orfeiture and restitution serve entirely distinct purposes: 'Congress conceived of forfeiture as *punishment* . . . . The purpose of restitution . . . , however, is not to punish the defendant, but to *make the victim whole again*.'" (quoting *United States* v. *Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011))); *Gordon*, 393 F.3d at 1052 n.6 ("[T]he MVRA's purpose is to make the victims whole; conversely, the Sentencing Guidelines serve a punitive purpose."). Sometimes we've held it's a hybrid, with "both compensatory and penal purposes." *United States* v. *Rich*, 603 F.3d 722, 729 (9th Cir. 2010). Even if *Apprendi* covers all forms of punishment, restitution's not "clearly" punishment, so we can't rely on *Southern Union* to overrule our restitution precedents.

Second, *Southern Union* concerned a determinate punishment scheme with statutory maximums: "[O]ur decisions broadly prohibit judicial factfinding that increases *maximum* criminal 'sentence[s],' 'penalties,' or 'punishment[s].'" 132 S. Ct. at 2351 (emphasis added). Restitution carries with it no statutory maximum; it's pegged to the amount of the victim's loss. A judge can't exceed the non-existent statutory maximum for restitution no matter what facts he finds, so *Apprendi*'s not implicated.

The Fourth Circuit has already held that *Southern Union* doesn't apply to restitution because "*there is no prescribed statutory maximum* in the restitution context." *United States* v. *Day*, 700 F.3d 713, 732 (4th Cir. 2012) (emphasis in original). And, prior to *Southern Union*, other circuits came to the same conclusion. *See Milkiewicz*, 470 F.3d at 404 (1st Cir.); *Reifler*, 446 F.3d at 117–20 (2d Cir.); *United States* v. *Sosebee*, 419 F.3d 451, 454 (6th Cir. 2005). Similarly, our own court held last December that *Southern Union* doesn't apply to criminal forfeiture because, like restitution, forfeiture lacks a statutory maximum: "The *Southern Union* Court explicitly held . . . that there could be no '*Apprendi* violation where no maximum is prescribed.'" *Phillips*, 704 F.3d at 770 (quoting *Southern Union*, 132 S. Ct. at 2353). *But see Southern Union*, 132 S. Ct. at 2350–51 (*Apprendi* applies to fines where the maximum is based on "the amount of . . . the victim's loss."). This difficulty with applying *Southern Union*—and, by extension *Apprendi*—to an indeterminate scheme further undermines any claim that *Southern Union* is "clearly irreconcilable" with our restitution caselaw.

## III.    Conclusion

Our precedents are clear that *Apprendi* doesn't apply to restitution, but that doesn't mean our caselaw's well-harmonized with *Southern Union*. Had *Southern Union* come down before our cases, those cases might have come out differently. Nonetheless, our panel can't base its decision on what the law might have been. Such rewriting of doctrine is the sole province of the court sitting en banc. Faced with the

question whether *Southern Union* has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable," we can answer only: No.

**AFFIRMED.**