

2017 AUG -7 ꞉ 10: 38

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75002-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRIAN DAVID BEASLEY, | ) | |
| | ) | |
| Appellant. | ) | FILED: August 7, 2017 |

SCHINDLER, J. — Brian David Beasley pleaded guilty to possession of a stolen vehicle and agreed to pay restitution for all losses and damage to the vehicle and its "contents." Beasley claims insufficient evidence supports the court's finding that the restitution is causally connected to the crime and challenges the amount of restitution. Beasley also contends imposition of the order of restitution violates his right to a jury trial. Because the sworn "Victim Loss Statement" and the unrebutted testimony of the victim establishes a causal connection and supports the amount of restitution and Beasley does not have a right to a jury trial on restitution under RCW 9.94A.753, we affirm the order setting restitution.

In 2015, Robert Neideigh lived in Kirkland. Neideigh worked as an outside sales representative for Tingley Rubber Company. The company leased the gray 2012 Ford

Explorer that he used for his job. Neideigh also worked part-time as a ski instructor at Stevens Pass.

On January 7, 2015, Brian David Beasley stole the Ford Explorer. Neideigh reported the theft of the car to the Kirkland Police Department. According to the police report, Neideigh told Officer K. Christenson that he planned to cancel the Stevens Pass lift ticket that was in the glove box. The police report lists the "Lift Pass" as stolen property. The Bellevue police recovered the Ford Explorer on January 29, 2015.

The State charged Beasley with two counts of possession of a stolen vehicle. In count I, the State alleged that Beasley possessed a stolen Honda Ridgeline on May 6, 2015 and in count II, that he possessed the stolen Ford Explorer on January 29, 2015. The information states, in pertinent part:

Count 1  Possession Of Stolen Vehicle

That the defendant Brian David Beasley in King County, Washington, on or about May 6, 2015, did knowingly receive, retain, possess, conceal and dispose of a stolen motor vehicle, to-wit: a Honda Ridgeline, knowing that such property had been stolen, and did withhold and appropriate the same to the use of a person other than Richard Wilson, the true owner and person entitled thereto;

Contrary to RCW 9A.56.068 and 9A.56.140, and against the peace and dignity of the State of Washington.

Count 2  Possession Of Stolen Vehicle

That the defendant Brian David Beasley in King County, Washington, between January 7, 2015 and January 29, 2015, did knowingly receive, retain, possess, conceal and dispose of a stolen motor vehicle, to-wit: a Ford Explorer, knowing that such property had been stolen, and did withhold and appropriate the same to the use of a person other than Robert Neideigh, the true owner and person entitled thereto.

Beasley pleaded guilty as charged. In the "Statement of Defendant on Plea of Guilty," Beasley admits that "[b]etween January 7 and January 29, 2015 in King County, WA, I possessed a stolen motor vehicle, a Ford Explorer. I knew the vehicle was stolen and withheld its use from Robert Neideigh, the true owner."[1] Beasley agreed to pay restitution to Neideigh "for all losses from and damages to the stolen vehicle[ ] and [the] contents."[2] Beasley stipulated to the facts set forth in the certification of determination of probable cause and the prosecutor's summary as "real and material facts."

The King County Prosecuting Attorney's Office Victim Assistance Unit (VAU) asked Neideigh to provide documentation for damages or missing property in the Ford Explorer when it was stolen.

On August 21, 2015, the court sentenced Beasley to a concurrent 22 months on each count of possession of a stolen vehicle. The judgment and sentence states restitution is "to be determined at [a] future restitution hearing." Beasley waived his right to be present at the hearing.

On August 21, Neideigh sent VAU Restitution Investigator Ciara Callais an e-mail with a list identifying property that was in the Ford Explorer when it was stolen and the replacement value:

1. 32 GB MP3 Player $249.00 . . .
2. Samsung 12V Car charger $19.99 . . .
3. SureFire p3x led flash light $165.24 . . .
4. Catalog Case 2 each $189.00 x 2 = $378.00 . . .
5. Leatherman New Wave Multitool $81.49 . . .
6. Sorel Boots Conquest size 11.5 $149.95 . . .
7. Patagonia Men[']s Triolet Gortex Jacket $429.99 . . .

---

[1] Beasley also admitted that "[o]n May 6, 2015, in King County, WA, I knowingly possessed a stolen vehicle, a Honda Ridgeline. I knew the vehicle was stolen and withheld its use from Richard Wilson, the true owner."

[2] Emphasis omitted.

8. Patagonia Men's Ultra Down Vest $249.00 . . .
9. Oakley Turbine Sunglasses $200.00 . . .
10. Under Armour Gym Bag $45.75 . . .
11. Nike Men's Trainer 3.0 Shoes $119.96 . . .
12. Sidi Kaos Cycling Shoes $299.95 . . .
13. Polar Heart Monitor $159.99 . . .
14. Pearl[ ]Izumi Bike Shorts $135.00 . . .
15. Under Armour Tee Shirt $27.99 . . .
16. North Face Furnace Down Sleeping Bag $258.95.

Neideigh included documentation for the replacement value of each item.

The court scheduled a restitution hearing for February 24, 2016. At the hearing, Beasley's attorney objected to the amount of restitution requested. The attorney argued Neideigh did not report any of the property listed in the e-mail to the police or his insurance company and the e-mail was not a "sworn statement." The court continued the restitution hearing to March 3, 2016.

Before the March 3 hearing, Neideigh submitted a Victim Loss Statement signed under penalty of perjury. The sworn statement incorporates the August 21, 2015 e-mail and supporting documentation and requests $2,968.25 in restitution.

At the March 3, 2016 restitution hearing, the State asked the court to allow Neideigh to testify by phone. Over the objection of the defense attorney, the court allowed Neideigh to testify under oath by phone.

Neideigh testified that the property listed in his Victim Loss Statement was in the Ford Explorer at the time of the theft. Neideigh described how he obtained and how long he owned each item. Neideigh testified that Officer Christenson did not ask him to identify or provide a description of the items in the stolen vehicle. Neideigh explained his employer Tingley Rubber Company leased the car and why he did not submit a claim on his home insurance policy.

4

The court ruled the State proved by a preponderance of the evidence that the items "were in fact taken out of the car" and that Neideigh established the replacement value of the stolen items. The court entered an order setting restitution in the amount of $2,968.25. Beasley appeals the order setting restitution.

As a preliminary matter, Beasley argues the court abused its discretion by allowing Neideigh to testify by phone without finding he was unavailable to testify in person. Because the rules of evidence do not apply to restitution hearings, we disagree. State v. Pollard, 66 Wn. App. 779, 784, 834 P.2d 51 (1992). The court did not abuse its discretion in finding it would be an "unreasonable imposition" to insist that Neideigh testify in person. In addition, the record shows Beasley had the opportunity to extensively cross-examine Neideigh.

Beasley argues the order setting restitution violates due process because insufficient evidence supports finding a causal connection between the restitution imposed and the crime and disputes the amount of restitution.

The authority to impose restitution is solely statutory. State v. Deskins, 180 Wn.2d 68, 81, 322 P.3d 780 (2014). The court shall order restitution "whenever the offender is convicted of an offense which results in . . . loss of property." RCW 9.94A.753(5).

" 'Restitution is allowed only for losses that are "causally connected" to the crimes charged.' " State v. Griffith, 164 Wn.2d 960, 965-66, 195 P.3d 506 (2008) (quoting State v. Tobin, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007) (quoting State v. Kinneman, 155 Wn.2d 272, 286, 119 P.3d 350 (2005))). A loss is causally connected if

"but for" the charged crime, the victim would not have incurred the loss. Griffith, 164 Wn.2d at 966; Tobin, 161 Wn.2d at 524.

Where, as here, the defendant disputes the amount of restitution, the State must prove the damages by a preponderance of the evidence. Kinneman, 155 Wn.2d at 285; Deskins, 180 Wn.2d at 82. The amount of restitution must be "based on easily ascertainable damages for . . . loss of property." RCW 9.94A.753(3). While the amount need not be established with specific accuracy, it must be supported by substantial and credible evidence. Griffith, 164 Wn.2d at 965. Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture. Griffith, 164 Wn.2d at 965; Kinneman, 155 Wn.2d at 285. Credibility determinations are for the trier of fact and are not subject to review. State v. Mines, 163 Wn.2d 387, 391, 179 P.3d 835 (2008).

The record supports finding a causal connection between the loss and the crime and the amount of restitution. Neideigh testified the items listed in the Victim Loss Statement he submitted under oath were in the Ford Explorer when Beasley stole the vehicle.

Neideigh testified that as an outside sales representative for the region covering Washington, Oregon, Idaho, and Alaska, he traveled 35,000 miles a year in the Ford Explorer. Neideigh described the Ford Explorer as "virtually my rolling office" where he kept catalogs and samples of the products he sold. Neideigh testified he kept a "winter box" in the Ford Explorer containing his boots and sleeping bag because he worked as a ski instructor at Stevens Pass. Neideigh stated he kept cycling equipment in the Ford Explorer because he took a spin class at 24 Hour Fitness.

6

Neideigh testified that the police officer who contacted him did not ask him to provide a detailed list of the items in the vehicle. Neideigh said he told the officer about the Stevens Pass lift pass because he was worried that whoever stole the Ford Explorer might use the lift ticket. Neideigh testified he did not make an insurance claim for the items in the Ford Explorer because his employer Tingley Rubber Company leased the car and he would have had to use his homeowner's insurance. Neideigh said the insurance agent told him that if he made a claim, it was "inevitable that my rates were going to go up and that my deductible wasn't going to cover" the replacement value of the stolen items.

Beasley cites State v. Dedonado, 99 Wn. App. 251, 991 P.2d 1216 (2000), to argue the State did not present sufficient documentation of a causal connection. Dedonado is distinguishable. In Dedonado, we vacated a restitution order where the court denied a defendant's request for an evidentiary hearing and the State did not present evidence that the restitution amount was causally connected to the crime by a preponderance of the evidence. Dedonado, 99 Wn. App. at 253-55, 257-58. Here, unlike in Dedonado, the court held an evidentiary hearing and the State presented unrebutted evidence to support finding a causal connection between the crime and the loss.

Neideigh also testified about the replacement value of each item. Neideigh testified the property and replacement values listed in the Victim Loss Statement were accurate. The sworn statement and the unrebutted testimony at the restitution hearing supports finding substantial and credible evidence and a reasonable basis to set the amount of restitution.

Beasley cites <u>Southern Union Co. v. United States</u>, 567 U.S. 343, 132 S. Ct. 2344, 183 L. Ed. 2d 318 (2012), to argue the order setting restitution violated his constitutional right to a jury trial.

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the United States Supreme Court held that " '[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In <u>Blakely v. Washington</u>, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004),[3] the Court defined the statutory maximum as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

In <u>Kinneman</u>, the Washington Supreme Court considered and rejected the argument that <u>Apprendi</u> and <u>Blakely</u> require a jury to determine restitution under RCW 9.94A.753. <u>Kinneman</u>, 155 Wn.2d at 277-82. The court held, "There is no right to a jury trial to determine facts on which restitution is based under RCW 9.94A.753." <u>Kinneman</u>, 155 Wn.2d at 282.

The court in <u>Kinneman</u> concluded that even though restitution is mandatory under RCW 9.94A.753, because the court has broad discretion in determining the amount, there is no established minimum or maximum amount. <u>Kinneman</u>, 155 Wn.2d at 282.

> While the restitution statute directs that restitution "shall" be ordered, it does not say that the restitution ordered must be equivalent to the injury, damage or loss, either as a minimum or a maximum, nor does it contain a set maximum that applies to restitution. [RCW 9.94A.753(5).]

---

[3] Emphasis omitted.

> Instead, RCW 9.94A.753 allows the judge considerable discretion in determining restitution, which ranges from none (in some extraordinary circumstances) up to double the offender's gain or the victim's loss.
> Given the broad discretion accorded the trial judge by the statute, the lack of any set maximum, and the deferential abuse of discretion review standard, the restitution statute provides a scheme that is more like indeterminate sentencing not subject to Sixth Amendment[4] jury determinations than the SRA's[5] determinate sentencing scheme at issue in Blakely.

Kinneman, 155 Wn.2d at 282.[6]

In Southern Union, a jury found a natural gas distributor guilty of violating federal environmental laws by storing liquid mercury without a permit for approximately 762 days. Southern Union, 567 U.S. at 346-47. The crime was punishable by a maximum fine of $50,000 a day. Southern Union, 567 U.S. at 347. After trial, the probation officer imposed a fine of $38.1 million. The company objected to imposition of the fine because the jury did not decide the number of days for the violation. Southern Union, 567 U.S. at 347. The Court held that because the statute imposed a maximum fine of $50,000 a day, under Apprendi, the jury must determine the facts to "set a fine's maximum amount." Southern Union, 567 U.S. at 356.

In United States v. Green, 722 F.3d 1146, 1150 (9th Cir. 2013), the Ninth Circuit held Southern Union does not implicate Apprendi and the imposition of restitution.

> Southern Union concerned a determinate punishment scheme with statutory maximums: "[O]ur decisions broadly prohibit judicial factfinding that increases maximum criminal 'sentence[s],' 'penalties,' or 'punishment[s].' " 132 S. Ct. at 2351 (emphasis added). Restitution carries with it no statutory maximum; it's pegged to the amount of the

---

[4] U.S. CONST. amend. VI.

[5] Sentencing Reform Act of 1981, chapter 9.94A RCW.

[6] Citations omitted.

victim's loss. A judge can't exceed the non-existent statutory maximum for restitution no matter what facts he finds, so Apprendi's not implicated.

Green, 722 F.3d at 1150.[7]

We adhere to the Washington Supreme Court decision in Kinneman and hold there is no right to a jury trial to determine the facts establishing the amount of restitution.

We also reject the argument that Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), undermines the reasoning of Kinneman. In Alleyne, the Court held that any fact that increases the mandatory minimum penalty for a crime is an "element" that must be submitted to the jury. Alleyne, 133 S. Ct. at 2155.[8]

---

[7] (Alterations in original). See also United States v. Day, 700 F.3d 713, 732 (4th Cir. 2012).

> As an initial matter, we note that Southern Union does not discuss restitution, let alone hold that Apprendi should apply to it. Instead, far from demanding a change in tack, the logic of Southern Union actually reinforces the correctness of the uniform rule adopted in the federal courts to date. That is, Southern Union makes clear that Apprendi requires a jury determination regarding any fact that "increases the penalty for a crime beyond the prescribed statutory maximum." 132 S. Ct. at 2350 (quoting Apprendi, 530 U.S. at 490). Thus, in Southern Union itself, the Apprendi issue was triggered by the fact that the district court imposed a fine in excess of the statutory maximum that applied in that case. [Southern Union, 132 S. Ct.] at 2349.
>
> Critically, however, there is no prescribed statutory maximum in the restitution context; the amount of restitution that a court may order is instead indeterminate and varies based on the amount of damage and injury caused by the offense. See 18 U.S.C. §§ 3663(b), 3663A(b). As a consequence, the rule of Apprendi is simply not implicated to begin with by a trial court's entry of restitution. As the Sixth Circuit aptly explained in United States v. Sosebee, "restitution is not subject to [Apprendi] because the statutes authorizing restitution, unlike ordinary penalty statutes, do not provide a determinate statutory maximum." 419 F.3d 451, 454 (6th Cir.), cert. denied, 546 U.S. 1082, 126 S. Ct. 843, 163 L. Ed. 2d 718 (2005). That logic was sound when written before Southern Union, and it remains so today.

Day, 700 F.3d at 732 (emphasis in original) (second alteration in original).

[8] Sofie v. Fibreboard Corp., 112 Wn.2d 636, 771 P.2d 711, 780 P.2d 260 (1989), is also inapposite (jury award of noneconomic damages reinstated in tort action where court entered judgment that reduced damages under a statute placing a limit on noneconomic damages recoverable by personal injury or wrongful death plaintiff).

Because Beasley does not have a right to a jury trial under RCW 9.94A.753, and the sworn Victim Loss Statement and the unrebutted testimony established a causal connection and the amount of restitution, we affirm the order setting restitution.

Schindler, J.

WE CONCUR:

Trickey, A.C.J.                    Cox, J.