2018 JAN 22 AM 9: 01



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75844-6-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KAO CHO SAEPHANH, | ) | |
| | ) | |
| Appellant. | ) | FILED:  January 22, 2018 |

SCHINDLER, J. — Kao Cho Saephanh pleaded guilty to residential burglary, possession of a stolen firearm, and theft in the first degree.  Saephanh stipulated to real facts as set forth in the certification for determination of probable cause, the prosecutor summary, and the supplemental prosecutor summary.  Saephanh admitted, "I wrongfully obtained jewelry and money belonging to Orfelinda Almeida in a value exceeding $5000," and agreed to pay restitution in full.  Saephanh challenges the order of restitution for the stolen gold jewelry and coins.  In the alternative, Saephanh claims the order of restitution violates his constitutional right to a jury trial.  Because sufficient evidence supports the order of restitution and Saephanh does not have a right to a jury trial on restitution, we affirm.

FACTS

During the summer 2015, Kao Cho Saephanh and Ryan Christopher Jackson committed several residential burglaries. On July 31, Saephanh unlawfully entered the home of Orfelinda Almeida and Victor Dias by breaking a window next to the front door. Saephanh stole gold jewelry, gold coins, and cash. Almeida reported the theft to the police. Almeida gave the police a list of the stolen jewelry, coins, and cash, totaling $78,075.

On August 1, Almeida and Dias contacted their insurance company Homesite. Under the terms of the Homesite policy, "[i]t is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits."[1]

On August 26, Almeida submitted a claim to Homesite. Almeida submitted an itemized list to Homesite that identifies approximately 27 different pieces of gold jewelry with precious stones, diamonds, and pearls from India; gold coins; and cash in the amount of approximately $2,000.00. The total value of the stolen items was $79,710.00 plus $6,893.20 in taxes for a total loss of $86,603.20. As part of the claim, Almeida and Dias acknowledged:

> "Any person who knowingly and with the intent to defraud any insurance company submits an application or statement of claim containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime."

Homesite paid to replace the window and front door. Homesite paid only $1,200.00 for the jewelry, coins, and cash because the loss exceeded the policy limit.

---

[1] Boldface omitted.

On August 27, the police arrested Saephanh and Jackson. The State charged Saephanh and Jackson with residential burglary, theft in the first degree, and possession of a stolen firearm.

Saephanh pleaded guilty to residential burglary, theft in the first degree, and possession of a stolen firearm. Saephanh stipulated to the facts set forth in the certification of determination of probable cause, the prosecutor's summary, and the prosecutor's supplemental summary as "real and material facts." Saephanh admitted he "wrongfully obtained jewelry and money belonging to Orfelinda Almeida in a value exceeding $5000." Saephanh agreed to pay restitution to Almeida "for all losses from and damages to the building and its contents."[2]

At the sentencing hearing on March 4, 2016, the court imposed a concurrent 84-month sentence. The judgment and sentence states a restitution hearing shall be set and Saephanh "waive[s] [his] right to be present."

The King County Prosecuting Attorney Victim Assistance Unit (VAU) asked Almeida to provide documentation for restitution. Almeida submitted a victim loss statement that attached an itemized list of the stolen gold jewelry, gold coins, and cash and photographs of Almeida wearing some of the jewelry. The victim loss statement states the value of the gold jewelry and gold coins from India is $76,000 and Saephanh stole cash in the amount of $2,075. Almeida also attached the Homesite report itemizing and documenting each piece of the gold jewelry and coins from India and the cash that was stolen. Almeida stated that after paying the deductible of $1,000, Homesite paid $1,200 for the stolen property. Almeida signed the victim loss statement

---

[2] (Italics omitted) (boldface omitted).

under penalty of perjury, stating that "the foregoing is a true and correct summary of the losses I incurred as a result of the crime investigated under the above cause number."[3]

On July 29, VAU sent the defense attorney the victim loss statement and a proposed order of restitution for $78,075.00 plus taxes for a total of 85,403.20. The State filed a memorandum before the restitution hearing on August 25. The memorandum states Homesite paid to replace "the entire entry door and adjacent windows" and attaches additional photographs from Homesite. The memorandum addresses the itemized personal property loss submitted to the police and Homesite.

> The personal property loss submitted by Orfelinda and Dias to their insurance contains fewer items than they had originally reported to police as stolen. However, the net value of the items in both lists is very close. In the police incident report the loss was stated to be $78,075. In the insurance claim, the loss was stated to be $79,710, plus taxes, which added another $6,893.20.
> Restitution papers also indicate that the policy maximum payment for the stolen property was $1,200.00. That leaves uninsured the victim's remaining stolen property, which their insurer valued at $86,603.20 (including taxes). Net after insurance payment is $85,403.20.

At the hearing, defense counsel objected to the amount of restitution for the gold jewelry and coins from India. Defense counsel argued the value of jewelry ranges "very significantly" and questioned the evidence to support the request for restitution. In response, the prosecutor argued:

> I don't know what documentation could be expected for jewelry that comes from India that's obtained years ago. I think that it's significant that these victims' request was — is very similar to the request they submitted in this restitution request. I also think that it's . . . unfortunate for them, very unfortunate for them that they had a very well [sic] maximum for their insurance coverage.

---

[3] Boldface omitted.

The court concluded that based on a preponderance of the evidence, "the loss claims submitted on behalf of [Almeida] is appropriately documented." The court entered an order setting restitution for Almeida in the amount of $85,403.20.

ANALYSIS

Saephanh challenges the restitution order. Saephanh argues sufficient evidence does not support the amount of restitution for the stolen gold jewelry and gold coins from India.

The trial court's authority to impose restitution is statutory. State v. Deskins, 180 Wn.2d 68, 81, 322 P.3d 780 (2014). The court shall order restitution "whenever the offender is convicted of an offense which results in . . . loss of property." RCW 9.94A.753(5). Where the defendant disputes the amount of restitution, the State must prove the amount by a preponderance of the evidence. State v. Kinneman, 155 Wn.2d 272, 285, 119 P.3d 350 (2005). We will not disturb a trial court's order of restitution absent abuse of discretion. State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). A court abuses its discretion when the restitution decision is " 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " State v. Enstone, 137 Wn.2d 675, 679-80, 974 P.2d 828 (1999)[4] (quoting State v. Cunningham, 96 Wn.2d 31, 34, 633 P.2d 886 (1981)).

The amount of restitution must be "based on easily ascertainable damages for . . . loss of property." RCW 9.94A.753(3). But the restitution amount need not be established with specific accuracy. State v. Griffith, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). Sufficient evidence supports a restitution order if the evidence affords a

---

[4] Internal quotation marks omitted.

reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture. Griffith, 164 Wn.2d at 965. The evidence presented must meet due process requirements and be reliable. State v. Pollard, 66 Wn. App. 779, 784-85, 834 P.2d 51 (1992).

Saephanh cites State v. Kisor, 68 Wn. App. 610, 844 P.2d 1038 (1993), to argue the sworn victim loss statement does not constitute sufficient evidence. Saephanh asserts that as in Kisor, the request for restitution is a vague description of the stolen property with "speculative ballpark amounts." Kisor does not support his challenge to the restitution order.

In Kisor, the defendant shot and killed a police dog. Kisor, 68 Wn. App. at 612-13. The court imposed $17,380 in restitution. Kisor, 68 Wn. App. at 613-14. The court based the award on a conclusory hearsay affidavit with a rough estimate of the costs of a new dog and training. Kisor, 68 Wn. App. at 620. The affidavit stated the risk manager " 'checked' " with the Tacoma Police Department and Spokane Canine Training Unit and referenced an advertisement from the West Virginia Canine College for the amounts of restitution. Kisor, 68 Wn. App. at 620. The advertisement did not support the estimate. Kisor, 68 Wn. App. at 620. We concluded the affidavit was not substantial credible evidence supporting the restitution order. Kisor, 68 Wn. App. at 620.

Here, unlike in Kisor, the State did not rely on hearsay evidence to support the request for restitution. Washington follows the general rule that the owner of chattel may testify to the value of property without being qualified as an expert. State v. Williams, 199 Wn. App. 99, 105-06, 398 P.3d 1150 (2017) (citing McCurdy v. Union

Pac. R.R., 68 Wn.2d 457, 468, 413 P.2d 617 (1966)). Almeida submitted a victim loss statement under penalty of perjury. Almeida submitted an itemized list of stolen jewelry and coins, identified each stolen piece and the value of each piece, and provided photographs of her wearing the gold jewelry from India. Almeida also submitted the insurance claim to Homesite that she provided under oath. Sufficient reliable evidence supports the amount of restitution and the court did not abuse its discretion in entering the order of restitution.

In the alternative, Saephanh argues the Sixth Amendment to the United States Constitution requires a jury finding on restitution.

In Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Blakely v. Washington, 542 U.S. 296, 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004),[5] the Court defined the "statutory maximum" as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

In Kinneman, the Washington Supreme Court expressly rejected the argument that Apprendi and Blakely require a jury to determine restitution under RCW 9.94A.753. Kinneman, 155 Wn.2d at 277-82. Although restitution is mandatory under RCW 9.94A.753, the Supreme Court concluded there is no established statutory minimum or

---

[5] Emphasis omitted.

maximum because the trial court has broad discretion in determining the amount.

Kinneman, 155 Wn.2d at 282.

> While the restitution statute directs that restitution "shall" be ordered, it does not say that the restitution ordered must be equivalent to the injury, damage or loss, either as a minimum or a maximum, nor does it contain a set maximum that applies to restitution. [RCW 9.94A.753(5).] Instead, RCW 9.94A.753 allows the judge considerable discretion in determining restitution, which ranges from none (in some extraordinary circumstances) up to double the offender's gain or the victim's loss.
> Given the broad discretion accorded the trial judge by the statute, the lack of any set maximum, and the deferential abuse of discretion review standard, the restitution statute provides a scheme that is more like indeterminate sentencing not subject to Sixth Amendment jury determinations than the SRA's[6] determinate sentencing scheme at issue in Blakely.

Kinneman, 155 Wn.2d at 282.[7] The court held that "[t]here is no right to a jury trial to determine facts on which restitution is based under RCW 9.94A.753." Kinneman, 155 Wn.2d at 282.

Saephanh cites a recent United States Supreme Court case, Southern Union Co. v. United States, 567 U.S. 343, 132 S. Ct. 2344, 183 L. Ed. 2d 318 (2012), to argue the order setting restitution violated his constitutional right to a jury trial under Apprendi. Southern Union does not implicate the imposition of restitution. Southern Union addressed the necessity of jury findings to determine the statutory maximum of a fine.

In Southern Union, a jury found a natural gas distributor guilty of violating federal environmental laws by storing liquid mercury without a permit for approximately 762 days. Southern Union, 567 U.S. at 346-47. The crime was punishable by a maximum fine of $50,000 a day. Southern Union, 567 U.S. at 347. After trial, the probation officer imposed a fine of $38.1 million. The company objected to imposition of the fine

---

[6] Sentencing Reform Act of 1981, chapter 9.94A RCW.
[7] Citations omitted.

because the jury did not decide the number of days for the violation. Southern Union, 567 U.S. at 347. The Court held that because the statute imposed a maximum fine of $50,000 a day, under Apprendi, the jury must determine the facts to "set a fine's maximum amount." Southern Union, 567 U.S. at 356.

In United States v. Green, 722 F.3d 1146 (9th Cir. 2013), the Ninth Circuit held that Southern Union does not implicate Apprendi and the imposition of restitution.

> Southern Union concerned a determinate punishment scheme with statutory maximums: "[O]ur decisions broadly prohibit judicial factfinding that increases maximum criminal 'sentence[s],' 'penalties,' or 'punishment[s].' " [Southern Union, 567 U.S. at 350] (emphasis added). Restitution carries with it no statutory maximum; it's pegged to the amount of the victim's loss. A judge can't exceed the non-existent statutory maximum for restitution no matter what facts he finds, so Apprendi's not implicated.

Green, 722 F.3d at 1150;[8] see also United States v. Day, 700 F.3d 713, 732 (4th Cir. 2012)[9] (After noting Southern Union does not discuss restitution, the Fourth Circuit concluded that because there is "no prescribed statutory maximum in the restitution context . . . , the rule of Apprendi is simply not implicated to begin with by a trial court's entry of restitution.").

We adhere to the Washington Supreme Court decision in Kinneman and hold there is no right to a jury trial to determine the facts establishing the amount of restitution. We reject the argument that Alleyne v. United States, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), undermines the reasoning of Kinneman.

In Alleyne, the Court held that any fact that increases the mandatory minimum penalty for a crime is an "element" that must be submitted to the jury. Alleyne, 133 S. Ct. at 2155.

---

[8] Some alterations in original.
[9] Emphasis omitted.

9

Saephanh attempts to characterize restitution as "damages" to assert he is entitled to a jury determination under Sofie v. Fibreboard Corp., 112 Wn.2d. 636, 771 P.2d 711, 780 P.2d 260 (1989). No authority supports Saephanh's argument that the analysis in Sofie applies to the determination of restitution in a criminal case.

We affirm the order of restitution.

WE CONCUR:

Trickey, ACJ

Cox, J.