**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, <br><br> v. <br><br> CHRISTOPHER PAUL GEORGE, *Defendant-Appellant.* | No. 18-50268 <br><br> D.C. No. <br><br> 5:12-cr-00065-VAP-2 <br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, Chief District Judge, Presiding

Argued and Submitted September 11, 2019
Pasadena, California

Filed February 4, 2020

Before: John B. Owens, Ryan D. Nelson,
and Eric D. Miller, Circuit Judges.

Opinion by Judge Miller

# SUMMARY[*]

### Criminal Law

The panel affirmed a sentence for mail fraud, wire fraud, and conspiracy, in a case in which the defendant co-owned and operated companies that defrauded nearly 5,000 homeowners out of millions of dollars.

The panel held that U.S.S.G. § 2B1.1(b)(2)(C), which provides for a six-level enhancement if the offense "resulted in substantial financial hardship to 25 or more victims," requires the sentencing court to determine whether the victims suffered a loss that was significant in light of their individual financial circumstances. The panel held that the district court did not abuse its discretion in concluding that 25 or more victims suffered substantial financial hardship. The panel wrote that the district court would not have been required to identify specific victims by name even if it had been asked to do so, and that it was sufficient for the government to produce evidence for enough of the victims to allow the sentencing court reasonably to infer a pattern. The panel held that both but-for and proximate causation were present.

The panel held that the district court did not abuse its discretion in imposing a sentence within the Sentencing Guidelines range. The panel wrote that, as the defendant recognizes, *United States v. Green*, 722 F.3d 1146 (9th Cir. 2013), forecloses his argument that the restitution order violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000),

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

because the judge, rather than a jury, determined the amount of the loss caused by the defendant.

## COUNSEL

Benjamin L. Coleman (argued), Coleman & Balogh LLP, San Diego, California, for Defendant-Appellant.

Aron Ketchel (argued) and Tritia L. Yuen, Assistant United States Attorneys; L. Ashley Aull, Chief, Criminal Appeals Section; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

MILLER, Circuit Judge:

Christopher George co-owned and operated companies that defrauded nearly 5,000 homeowners out of millions of dollars. A jury found him guilty of mail fraud, wire fraud, and conspiracy, in violation of 18 U.S.C. §§ 1341, 1343, and 1349. The district court originally sentenced him to 240 months of imprisonment and ordered him to pay more than $7 million in restitution.

George appealed. We affirmed his conviction but vacated his sentence and remanded to the district court with instructions to recalculate the total offense level and to consider recent changes to the United States Sentencing Guidelines in determining a reasonable sentence. *United States v. George*, 713 F. App'x 704, 705 (9th Cir. 2018). At resentencing, George asked the district court to apply the

newer version of the Guidelines (reflecting the November 2015 amendments), and the government agreed. Using the new Guidelines, the district court applied many of the same enhancements and reduced George's sentence by just five months, to 235 months. It also left the restitution order in place.

George again challenges his sentence. He focuses on the district court's application of section 2B1.1(b)(2)(C) of the Guidelines, which provides for a six-level enhancement if the offense "resulted in substantial financial hardship to 25 or more victims." U.S.S.G. § 2B1.1(b)(2)(C) (2016). We review the district court's interpretation of the Sentencing Guidelines de novo, its factual findings for clear error, and its application of the Guidelines to the facts for abuse of discretion. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170–72 (9th Cir. 2017) (en banc). We affirm.

George argues that the district court erred in finding that 25 or more victims suffered substantial financial hardship. Addressing that argument requires us to examine the meaning of "substantial financial hardship," a term we have not previously interpreted. We conclude that section 2B1.1(b)(2) requires the sentencing court to determine whether the victims suffered a loss that was significant in light of their individual financial circumstances.

We begin by considering the first word in the operative part of the provision: the adjective "substantial." The Supreme Court has recognized that "substantial" indicates "considerable" or "to a large degree." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 196 (2002) (citing *Webster's Third New International Dictionary* 2280 (1976)); *see also Black's Law Dictionary* 1728 (11th ed. 2019) (defining "substantial" as "material"); *Webster's Third New International Dictionary* 2280 (1993) ("being of

moment: important"). By including "substantial" before "financial hardship," the provision excludes minor or inconsequential financial harms. That conclusion is supported by the noun "hardship," which itself suggests something more than a mere inconvenience. *See Webster's Third New International Dictionary* 1033 (1993) ("suffering, privation"). In other words, to be substantial, the victim's financial hardship must be significant.

Significance and substantiality are relative concepts: to satisfy section 2B1.1(b)(2), financial hardship must be substantial in comparison to something else. *Cf. United States v. Munster-Ramirez*, 888 F.2d 1267, 1270 (9th Cir. 1989) (examining the Guidelines' reference to "a substantial portion of [the defendant's] income" and concluding that it "must be defined in relative terms"). The most natural point of comparison is the financial condition of the victim.

The application notes in the commentary to the Guidelines point in the same direction. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) (Guidelines commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). The notes provide:

> In determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim—
>
> (i)      becoming insolvent;
>
> (ii)      filing for bankruptcy . . . ;

(iii)   suffering substantial loss of a retirement, education, or other savings or investment fund;

(iv)   making substantial changes to his or her employment, such as postponing his or her retirement plans;

(v)   making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and

(vi)   suffering substantial harm to his or her ability to obtain credit.

U.S.S.G. § 2B1.1 cmt. n.4(F). The notes reinforce the conclusion that our inquiry must consider how the loss affects the victim. For some victims, a loss of, say, $10,000 might not have any of the listed effects. For others, a much smaller loss might have such effects. The provision thus requires a focus on the victims' individual circumstances, a focus that is consistent with the Sentencing Commission's goal in amending section 2B1.1 in 2015 to "place greater emphasis on the extent of harm that particular victims suffer." Sentencing Guidelines for United States Courts, 80 Fed. Reg. 25,782-01, 25,791 (May 5, 2015).

Our interpretation of section 2B1.1(b)(2) accords with that of other courts of appeals that have examined the provision. As the Seventh Circuit has explained, "whether a loss has resulted in a substantial hardship . . . will, in most cases, be gauged relative to each victim," and "[t]he same dollar harm to one victim may result in a substantial financial hardship, while for another it may be only a minor hiccup." *United States v. Minhas*, 850 F.3d 873, 877 (7th Cir. 2017);

*accord United States v. Castaneda-Pozo*, 877 F.3d 1249, 1252 (11th Cir. 2017) (per curiam) ("[T]he inquiry is specific to each victim."); *United States v. Brandriet*, 840 F.3d 558, 561 (8th Cir. 2016) (per curiam) (examining the impact of the conduct on "the cost of [the victim's] living expenses").

In advocating a narrower understanding of "substantial financial hardship," George relies on our decision in *United States v. Merino*, 190 F.3d 956 (9th Cir. 1999). In that case, we examined a Guidelines enhancement for environmental offenses for which "cleanup required a substantial expenditure." *Id.* at 958 (quoting U.S.S.G. § 2Q1.2(b)(3)). According to George, because we held in *Merino* that a $32,000 cleanup expenditure was not substantial, it follows that his victims' losses, most of which were smaller than that, "would not be substantial." In fact, we recognized in *Merino* that substantiality depends on context: "[W]hat is a 'substantial' expenditure for one thing, such as buying furniture, is not very 'substantial' for another, such as if one were purchasing a dwelling for $32,000." *Id.* Our interpretation of section 2B1.1(b)(2) is faithful to that principle.

So was the district court's decision here. The court found that "[t]here was clear and convincing evidence here in the form of trial testimony from numerous victims that the victims experienced substantial financial hardship because of this offense." George's companies targeted distressed homeowners, falsely claiming to be operating under a loan-modification program sponsored by the federal government. Most of the victims paid fees of between $1,000 and $3,000, and, as the district court explained, "given the state that most of the victims were in, that was not an insubstantial sum at the time." Victims were instructed to stop making payments

on their mortgages, and some "lost their residences because they either made their payments to [George's companies] instead of to their lender or, in some instances, their names were forged on documents which led to the foreclosure of their property."

George concedes that his victims lost between $1,000 to $3,000 in fees paid to his companies, but he asserts that the loss of those amounts does not constitute substantial financial hardship. George is right that, for some victims, causing the loss of a few thousand dollars would not be substantial enough to trigger the enhancement. But the district court did not clearly err in determining that "given the state that most of [George's] victims were in," a few thousand dollars was indeed substantial. And at least 25 victims lost much more than that amount in fees—some lost their homes; some filed for bankruptcy; and many others borrowed money to avoid foreclosure, fell further behind on mortgage payments, renegotiated their loans on worse terms, or paid additional penalties and fines. The district court did not abuse its discretion in concluding that 25 or more victims suffered substantial financial hardship.

George objects that the district court did not identify 25 specific victims who suffered substantial hardship. We do not agree that the district court would have been required to identify specific victims by name even if it had been asked to do so. We have held that estimating losses does not require "absolute precision," and a district court may "make a reasonable estimate . . . based on the available information." *United States v. Zolp*, 479 F.3d 715, 719 (9th Cir. 2007). We conclude that the same is true of counting victims. Other courts have rejected the suggestion that a sentencing court must "identif[y] which of the particular victims it [is] including in its calculation." *Minhas*, 850 F.3d at 879; *see*

*also United States v. Poulson*, 871 F.3d 261, 269 (3d Cir. 2017). Instead, it was "sufficient for the government to produce evidence for enough of the [victims] to allow the sentencing court reasonably to infer a pattern." *United States v. Pham*, 545 F.3d 712, 720 n.3 (9th Cir. 2008).

In any event, George conceded that at least 25 of his victims lost between $1,000 to $3,000 in fees and stopped paying their mortgages as a result of his scheme, and he merely raised legal challenges to the application of the section 2B1.1(b)(2)(C) enhancement. Because he never challenged any specific factual inaccuracies in the presentence report, the district court correctly accepted the report's findings, which showed that more than 25 victims suffered significant losses. *See* Fed. R. Crim. P. 32(i)(3)(A); *United States v. Christensen*, 732 F.3d 1094, 1102 (9th Cir. 2013). The district court had no obligation to identify each of the 25 victims by name.

Even if 25 or more victims suffered substantial financial hardship, George says, the district court still should not have applied the enhancement because his conduct was not the cause of the hardship. Section 2B1.1(b)(2) refers to conduct that "resulted in" substantial financial hardship, language that we have interpreted to impose a causation requirement. *See United States v. Hicks*, 217 F.3d 1038, 1048–49 (9th Cir. 2000). As relevant here, that requirement embraces two distinct concepts: but-for causation and proximate causation. *See Burrage v. United States*, 571 U.S. 204, 210 (2014). But-for causation is a relatively undemanding standard: a but-for cause of a harm can be anything without which the harm would not have happened. *See Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 855 (9th Cir. 2019). Proximate causation is a more restrictive requirement that excludes some of the improbable or remote causal connections that would satisfy

a pure but-for cause standard. Generally, proximate causation exists only when a harm was a foreseeable result of the wrongful act. *See United States v. Pineda-Doval*, 614 F.3d 1019, 1028 (9th Cir. 2010). The government suggests that section 2B1.1(b)(2) does not require foreseeability, but proximate cause is a well-established principle of the common-law, and we presume that the Sentencing Commission did not mean to dispense with it without saying so. *Cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014); *Hicks*, 217 F.3d at 1049. We agree with the government, however, that both but-for and proximate causation were present here.

The district court expressly found but-for causation, and its finding was not clearly erroneous. George induced his victims to pay him money and, in some cases, to stop making mortgage payments. The court could reasonably infer that George's conduct was the direct cause—and certainly a but-for cause—of the ensuing financial hardship. *See United States v. Laurienti*, 611 F.3d 530, 557 (9th Cir. 2010) (concluding that it was reasonable to infer that all of the victims who paid into the investment scheme were in fact "duped by the conspiracy"). Clear and convincing evidence supports the district court's finding that the necessary number of victims suffered substantial financial hardship as a result of George's offense.

George emphasizes that he targeted victims who had fallen behind on their mortgage payments, and he asserts that he did not cause them financial hardship because they were going to lose their homes anyway, even if he had not defrauded them. "I stole only from those who were already poor" is not often advanced as an argument in mitigation, and we find it unpersuasive. As we have explained, a defendant inflicts "substantial financial hardship" when he

causes a significant adverse change in his victims' financial situation—including, as George did, by increasing the desperation of those already struggling.

The proximate cause requirement is also satisfied here because the record leaves no doubt that the consequences of George's actions were foreseeable. As the co-owner of the fraudulent businesses, George personally addressed his victims' complaints, and he knew that his employees were supplying false information to victims and had instructed them to stop paying their mortgages. He has not suggested that any intervening event was a more direct cause of the victims' losses. George notes that the district court did not make an explicit proximate-cause finding, but there was no need for it to do so. George's arguments about proximate cause were derivative of his arguments about but-for cause. The district court fully explained its rejection of George's arguments about but-for cause, and its reasoning applied equally to proximate cause.

In addition to disputing the application of section 2B1.1(b)(2), George raises two other challenges to his sentence. We reject both.

First, George contends that his sentence was substantively unreasonable under 18 U.S.C. § 3553(a). The district court extensively discussed the applicability of the section 3553(a) factors, including the mitigating circumstances George presented. It also recognized the seriousness of George's offense, noting that it was "a large scheme, national in scope" that had "affected thousands, most of them already in danger of losing their residences, including retired persons who had worked for decades, lacked formal education, and whose only asset was the house that they had acquired and lived in for decades." And it emphasized George's leadership role in the scheme. Based

on its consideration of all the factors, the district court did not abuse its discretion in imposing a sentence within the Guidelines range. *See United States v. Carty*, 520 F.3d 984, 993, 995 (9th Cir. 2008) (en banc).

Second, George argues that the restitution order violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the judge, rather than a jury, determined the amount of the loss George caused. As George recognizes, however, we have held that *Apprendi* does not apply to restitution orders. *See United States v. Green*, 722 F.3d 1146, 1149, 1151 (9th Cir. 2013).

**AFFIRMED**.