# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1217
_____

United States of America

*Plaintiff - Appellee*

v.

Leon J. Brandriet

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: October 17, 2016
Filed: October 27, 2016
[Published]

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Leon J. Brandriet pleaded guilty to one count of mail fraud and now appeals the district court's[1] application of a two-level sentencing enhancement. For the following reasons, we affirm.

## I.  BACKGROUND

In September 2011, a van struck the home of Mary Ann Espelien in Watertown, South Dakota. Espelien hired Brandriet, an independent insurance adjustor, to act as an agent on her behalf to adjust a claim with her insurer, DeSmet Farm Mutual Insurance Company. They agreed that in exchange Brandriet would keep ten percent of payments made for reimbursement for damages to the structure and contents of Espelien's home but that he would not keep any portion of payments made for Espelien's living expenses. They also agreed the payments from DeSmet would go directly to Brandriet, who would then disburse the funds according to their agreement. Espelien was distressed that she would not have enough money to afford housing while her badly damaged house was being repaired. Espelien had apparently moved to Watertown only recently to be near family, and she had spent much of her money fixing up her house. She asked her employer if she could be sent to another area of the country where she could earn more money, and her employer sent her to Pueblo, Colorado. Because Espelien was without much money, she temporarily lived out of her car while she looked for affordable housing in Pueblo. She also occasionally traveled back to South Dakota to check on her home and belongings. The added expenses caused her to dip into her retirement savings, postponing her retirement plans.

Of the $62,643.08 paid by DeSmet to Brandriet, $12,745.31 was earmarked for paying the costs of Espelien's living expenses, moving to a new residence, and

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

cleaning and storing her personal property. In total, Brandriet passed on $18,709.69 to Espelien, and $7,561.60 to Mark Kruse, the contractor working on Espelien's home (and Brandriet's nephew). Because the timing of the payments to Espelien for living and moving expenses is germane to this case, we briefly summarize the relevant specifics.[2] DeSmet issued a check to Espelien (but sent to Brandriet) on November 22, 2011, in the amount of $7,269.49 for cleaning personal property, packing materials, and moving charges. Brandriet deposited that check, along with another check from DeSmet, on November 28, and on November 30 he mailed a check to Espelien for $8,000. DeSmet sent another check to Brandriet in the amount of $2,676.82 on December 22, 2011, for rent and living expenses, and Brandriet deposited that amount on January 30, 2012. But he did not forward any funds on to Espelien until April 30, 2012, when he mailed her a check for $735, and on June 1 when he electronically deposited another $735 in Espelien's account. Also on June 1, 2012, DeSmet sent a check to Brandriet for $14,567.68, of which $2,175 was for rent and $624 for property storage. Brandriet deposited that check June 6 and that same day sent $561.60 to Kruse for storage fees. (Espelien had been storing her property in Kruse's garage while she was living in Colorado, and so this amount apparently compensated Kruse for doing so.) On June 14, 2012, Brandriet sent Espelien a check for $9,239.69.

Brandriet converted roughly $30,000 of Espelien's insurance payments to his own use. After an investigation by the FBI and an indictment on five counts of mail fraud, he pleaded guilty to one count and agreed to pay restitution for the amount in all five counts. At sentencing and over Brandriet's objection, the district court increased his offense level by two because it found his offense caused Espelien substantial financial hardship. The district court stated:

---

[2]We will not belabor the details of other payments by DeSmet made for the purpose of repairing Espelien's home.

Having heard the testimony of Miss Espelien, I find [Brandriet's offense] did result in substantial financial hardship to her. She ended up having to relocate herself, relocate her business. The Defendant was using money that was hers and should have been hers for the purpose of temporary housing. He didn't give the money to her for that purpose. He spent it himself.

Brandriet now appeals the application of this sentencing enhancement.

## II.    DISCUSSION

Brandriet argues that the district court erred in finding his crime resulted in substantial financial hardship to Espelien. "In reviewing a sentence for procedural error, we review the district court's factual findings for clear error and its application of the guidelines de novo." United States v. Barker, 556 F.3d 682, 689 (8th Cir. 2009). Under clear error review, we ask whether we have a definite and firm conviction that the district court has committed a mistake. United States v. Sistrunk, 612 F.3d 988, 991 (8th Cir. 2010). The U.S. Sentencing Guidelines Manual (U.S.S.G.) directs the district court to increase a defendant's offense level by two if the offense "resulted in substantial financial hardship to one or more victims." U.S.S.G. § 2B1.1(b)(2)(A)(iii). The application note to § 2B1.1 on when to apply the substantial-financial-hardship enhancement states that

> the court shall consider, among other factors, whether the offense resulted in the victim–
>
> . . . .
>
> (iii) suffering substantial loss of a retirement, education, or other savings or investment fund;
>
> (iv) making substantial changes to his or her employment, such as postponing his or her retirement plans; [and]

-4-

> (v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home[.]

Id. § 2B1.1 cmt. n.4(F).

Brandriet acknowledges that Espelien suffered substantial financial hardship, but he asserts that this hardship was caused by the accident and not by his theft of her insurance proceeds. He points out that the financial hardship Espelien suffered was difficulty with living expenses and that he paid Espelien more than the amount she would have received from DeSmet for that purpose. In short, the money he stole was money for repairs to Espelien's home and not for her living expenses. Therefore, Brandriet argues, it was the accident rather than his crime that resulted in her need to dip into her retirement savings, postpone her retirement plans, and relocate. The government points out that Brandriet did not pass on DeSmet's second payment related to living expenses to Espelien for several months. He deposited the December 22, 2011, check a month later, and did not write a check to Espelien until April 2012, three months later. The government also argues that Brandriet's theft resulted in prolonging the amount of time it took to repair Espelien's home, thus increasing the cost of Espelien's living expenses and causing her substantial financial hardship. Brandriet replies that "the record is not clear whether and how much Brandriet's conduct extended the period during which Espelien was displaced from her home."

We agree with the government. The mere fact that Brandriet paid Espelien an amount greater than the insurance proceeds she would have received for living expenses does not foreclose the district court, within its discretion to which we must defer, from making a factual finding that his theft of approximately $30,000 caused Espelien's troubles. Rent and other living expenses are time sensitive, and Brandriet withheld a roughly $2,700 check for that purpose for four months after it was issued, and then he only passed on two payments of $735 for a total of $1,470. Ultimately

Brandriet did pass on around $19,000, an amount greater than the roughly $13,000 DeSmet paid for living expenses and moving and related storage costs. But although the money Brandriet stole was earmarked for home repairs, Espelien was under no obligation to spend it for that purpose. She could have decided to use some of that amount to meet her living expenses and delay some or all of the repairs to her home. We agree that direct evidence of the details of how Brandriet's theft resulted in Espelien's substantial financial hardship are, on this record, thin, and that the district court relied to some degree on inference to make such a finding. It was not, however, clear error for the district court to have done so.

## III. CONCLUSION

Accordingly, we affirm.

_____