[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16031

_____

D.C. Docket No. 8:16-cr-00061-SDM-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALFREDO CASTANEDA-POZO,
Spanish interpreter required,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 19, 2017)

Before TJOFLAT and MARTIN, Circuit Judges, and MURPHY,* District Judge

PER CURIAM:

Alfredo Castaneda-Pozo appeals from his sentence of 63 months'

_____

* Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of
Michigan, sitting by designation.

imprisonment, followed by 5 years of supervised release, along with $429,044.96 in restitution, after he was convicted of one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and ten counts of bank fraud, in violation of 18 U.S.C. § 1344. On appeal, Castaneda-Pozo argued that the district court erred by finding that he was responsible for the scheme's entire intended loss amount for purposes of calculating his offense level. He also contended that the district court erred by finding that five or more victims of the scheme suffered substantial financial hardship.

## I.

"The district court's factual findings are reviewed for clear error, and its application of those facts to justify a sentencing enhancement is reviewed *de novo*." *United States v. Matchett*, 802 F.3d 1185, 1191 (11th Cir. 2015) (citation omitted), *cert. denied*, 137 S. Ct. 1344 (2017). We will not reverse a district court's factual finding unless we are "left with a definite and firm conviction that a mistake has been committed." *Id*. "Where the factfinding resolves a swearing match of witnesses, the resolution will almost never be clear error." *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005).

In determining the base offense level under the Guidelines, courts must consider all of a defendant's relevant conduct. *See* U.S. Sentencing Guidelines Manual § 1B1.3 (U.S. Sentencing Comm'n 2004) ("U.S.S.G."). "When an offense

involves jointly undertaken criminal activity, relevant conduct includes all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." *United States v. Bradley*, 644 F.3d 1213, 1296 (11th Cir. 2011) (quotation omitted). Section 2B1.1 of the Guidelines provides for a 12-level increase for a fraud offense involving between $250,000 and $550,000 in losses. U.S.S.G. § 2B1.1(b)(1)(G). The application notes clarify that the "loss is the greater of actual loss or intended loss." *Id*. § 2B1.1, cmt. 3(A). "Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.*, cmt. 3(A)(i). "Intended loss," on the other hand, means "the pecuniary harm that defendant purposely sought to inflict" including pecuniary harm "that would have been impossible or unlikely to occur." *Id.*, cmt. 3(A)(ii).

The district court did not clearly err by finding that Castaneda-Pozo was accountable for the scheme's entire intended loss amount. The district court found the scheme's relevant conduct included renting cars, stealing money orders from drop boxes, and depositing the money orders into co-conspirators' accounts—all during the time when rent payments were normally due. The record shows that two co-conspirators, Miranda-Noda and Puente-Lopez, told investigators that Castaneda-Pozo was a ringleader of the scheme along with Miranda-Noda; that Castaneda-Pozo was paid to rent cars on multiple occasions over periods of time when rent payments were due; that Castaneda-Pozo was observed riding in a car

3

with Miranda-Noda in an area near apartment complexes from which the schemers stole checks; and that Castaneda-Pozo was paid to deposit between 50–55 money orders. Castaneda-Pozo refuted the evidence with his own testimony that he was not a ringleader and that he did not know what Miranda-Noda did with the rental cars or that the money orders he deposited were stolen. He contends on appeal his testimony is more credible because both Miranda-Noda and Puente-Lopez had twice previously lied to investigators about their roles in the scheme.

In sum, the district court was left with a credibility determination: it had to decide whether it believed the testimony of Castaneda-Pozo or the testimony of Miranda-Noda and Puente-Lopez about the extent of Castaneda-Pozo's involvement. The court found Castaneda-Pozo's story that he was unaware of the scheme's relevant conduct implausible, as the pattern would be obvious to him or anyone with reasonable cognitive ability. The district court did not clearly err in its finding because the evidence essentially amounted to a "swearing match" regarding Castaneda-Pozo's knowledge. *Rodriguez*, 398 F.3d at 1296. Although Castaneda-Pozo argues that Miranda-Noda's and Puente-Lopez's previous lies to investigators cast doubt about their honesty, the district court had discretion to find their testimony more credible. *Id*. at 1297.

**II.**

4

Amendment 792 to the Sentencing Guidelines provides for a four-level enhancement to a defendant's offense level if a fraud offense "resulted in substantial financial hardship to five or more victims." *See* U.S.S.G. Suppl. App. C, Amend. 792; U.S.S.G. § 2B1.1(b)(2)(B). "Substantial financial hardship" is not defined, but Application note 4(F) to subsection (b)(2) provides that courts shall consider, among other factors, whether the offense resulted in the victim: (i) becoming insolvent; (ii) filing for bankruptcy under the Bankruptcy Code; (iii) suffering substantial loss of a retirement, education, or other savings or investment fund; (iv) making substantial changes to his or her employment, such as postponing his or her retirement plans; (v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and (vi) suffering substantial harm to his or her ability to obtain credit. U.S.S.G. § 2B1.1, cmt. 4(F).

Although we have yet to interpret the provision, opinions from other circuits provide guidance. *See United States v. Minhas*, 850 F.3d 873 (7th Cir. 2017); *United States v. Brandriet*, 840 F.3d 558 (8th Cir. 2016). In *Minhas*, the Seventh Circuit held that a district court did not clearly err when it found that victims of a travel agency's fraud suffered substantial financial hardship when the victims were of the working class and suffered more than $2,000 in losses that would take years to recover. 850 F.3d at 876–77, 879. The court emphasized that the inquiry is specific to each victim, as "[t]he same dollar harm to one victim may result in a

5

substantial financial hardship, while for another it may be only a minor hiccup." *Id*. at 877. In *Brandriet*, the Eighth Circuit held that a district court did not clearly err when it found that a victim who lost savings, postponed her retirement, and was forced to move suffered substantial financial hardship. 840 F.3d at 561–62.

Likewise, we find here that the district court did not clearly err by finding that victims suffered substantial financial hardship when they were made insecure in life's basic necessities.[1] The parties agree that one victim suffered substantial financial hardship, so the question is whether at least four of the remaining victims suffered hardship as well. The record shows that the other five victims were each required to repay $400–$800. Because the stolen checks were rent payments submitted near the rent deadline, the repayments were due on short notice to comply with the terms of the victims' leases. Consequently, three victims had to borrow money from friends and family, one had to take out a loan at 29% interest, two fell behind on other bills, one had to take on an extra part-time job, and one had to work extra shifts. And despite all of those arrangements, two were still threatened with eviction. Castaneda-Pozo contends that these circumstances amount to hardships, but not substantial hardships. We respectfully disagree.

---

[1] Our analysis is limited to the district court's application of the relevant sentencing guidelines to the facts of the case. Although Castaneda-Pozo may have raised additional arguments about the adequacy of the district court's factual findings in his reply on appeal, those issues should have been raised in the initial brief. *See United States v. Ardley*, 273 F.3d 991, 991 (11th Cir. 2001). Rather than challenge the adequacy of the findings in his initial brief, Castaneda-Pozo relied on the district court's findings of fact when he challenged the application of Application Note (4)(F) to the facts. Initial Brief of Appellant, pp. 20–22.

Although each victim's pecuniary loss may not seem great, Castaneda-Pozo's actions made his victims insecure in life's basic necessities—housing, electricity, water, and food. Certainly that insecurity is sufficient to raise a substantial hardship, and the district court therefore did not clearly err.

## III.

For these reasons, the district court's sentence is **AFFIRMED**.