[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14014
Non-Argument Calendar

_____

D.C. Docket No. 4:19-cr-00015-RSB-CLR-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AMARI SAMS,
a.k.a. Sharif Tartt,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(April 20, 2020)

Before WILLIAM PRYOR, JILL PRYOR and BRANCH, Circuit Judges.

PER CURIAM:

Amari Sams appeals his 200-month total sentence after a jury convicted him of conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846 (Count 1); aiding and abetting the possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count 2); being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 3); possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924(a)(2) (Count 4); and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 5). He contends that the district court erred by applying a two-level Sentencing Guidelines' enhancement to his offense level calculation, pursuant to U.S.S.G. § 3C1.2, for recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement. We affirm.

## I.    Background

The evidence presented at Sams's trial established that on Sunday, April 22, 2018, at approximately 2:30 in the morning, a Georgia state trooper patrolling a highway outside of Savannah attempted to pull over a truck that was reported stolen. The truck initially slowed as if to stop, but then sped up and a high-speed chase ensued for several miles, reaching speeds of over 100 miles an hour. During the chase, a gun was thrown from the rear passenger side of the truck and the

primary pursuing trooper ran over it. The truck was stopped on the highway after it crashed into a guardrail following two pursuit intervention technique ("PIT") maneuvers by the pursuing state trooper. Two occupants of the vehicle fled out of the driver's side window and down a large embankment, but they were subsequently caught by pursuing officers. A third individual, later identified as Sams, got out of the back passenger side of the truck with his hands up. But then he ran from the scene, crossing several lanes of highway, and traveling down an embankment, where he attempted to hide in a ditch. But a local responding Savannah police officer quickly located and apprehended him without incident. A search of the truck revealed a large amount of methamphetamine pills, and officers found a backpack next to the truck containing a large amount of marijuana, digital scales, baggies, another stolen firearm, and cocaine. Marijuana and a large amount of cash were discovered on Sams's person. During a post-arrest interview with police, Sams admitted that he possessed the firearm that was thrown out of the truck for protection during an earlier drug transaction in Savannah, but he denied throwing it out of the window. The firearm that was thrown from the vehicle was reported stolen from an address that was near Sams's residence. The parties entered a joint stipulation at trial that Sams was previously convicted of a felony and had knowledge of that conviction. At the conclusion of the trial, the jury found Sams guilty as charged.

3

Prior to sentencing, the probation office prepared a presentence investigation report ("PSI"), which recommended, as relevant here, that a two-level enhancement be added to Sams's base offense level, pursuant to U.S.S.G. § 3C1.2, for recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. Specifically, the PSI noted that the three codefendants had "led officers on a high-speed chase through Chatham County that exceeded speeds of 120 miles per hour," and Sams "willfully participated and aided and abetted the reckless endangerment during flight . . . [by] discard[ing] a gun during flight of the vehicle." Based on a total offense level of 26 and a criminal history category of VI, Sams's advisory guideline range was 120 to 150 months' imprisonment, plus a consecutive minimum-mandatory term of 60 months' imprisonment for the § 924(c) conviction. Sams objected to the § 3C1.2 enhancement, arguing that his actions did not rise to the level of reckless endangerment during flight and that it had not been proven that he was the one who threw the firearm from the vehicle. He also argued that, even if he did throw the firearm out of the window, that action was not enough for the enhancement.

At sentencing, Sams's counsel argued that the § 3C1.2 enhancement was inappropriate simply based on the fact that the firearm was discarded, and compared it to several other cases she had defended in recent years in which the

4

enhancement was not applied, despite similar or more aggravating facts.  The district court overruled Sams's objection to the enhancement.  In overruling the objection, the district court found by a preponderance of the evidence that Sams threw the gun out the window at a high rate of speed and determined that this action aided and abetted the flight.  Additionally, the district court concluded that Sams recklessly created a substantial risk of death or serious bodily injury while fleeing law enforcement by: (1) throwing the gun out of the window, which could have hit the pursuing state trooper's windshield or cracked the windshield of another car on the highway; and (2) crossing multiple lanes of traffic on a heavily-traveled highway and forcing officers to follow him across the highway and down an embankment "in the dead of night."  Accordingly, the district court adopted the PSI, and imposed a total sentence of 200 months' imprisonment.[1]  In imposing the sentence, the district court noted that "[e]ven if the guidelines said something different about the sentence in this case, I think that's the appropriate sentence, the sentence I've handed out, and it reflects all those [18 U.S.C. §] 3553 factors.[2]"

---

[1] The total sentence was comprised of concurrent terms of 140 months' imprisonment as to Counts 1 and 2, concurrent terms of 120 months' imprisonment as to Counts 3 and 4, and a consecutive 60-month term as to Count 5.

[2] Pursuant to 18 U.S.C. § 3553(a), the district court must consider the following factors in fashioning a reasonable sentence:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and to protect the public; the types of sentences available; the advisory Sentencing Guidelines and pertinent policy

The district court further explained that it believed 200 months was the appropriate sentence in light of Sams's extensive criminal history and the fact that, despite previously being "sentenced to a lengthy period of incarceration," he continued to engage in criminal behavior.[3]  Following pronouncement of his sentence, Sams renewed his objection to the § 3C1.2 enhancement.  This appeal followed.

## II.    Standard of Review

We review the district court's interpretation and application of the Guidelines, including the application of enhancements to specific offense characteristics, *de novo*.  *United States v. Barakat*, 130 F.3d 1448, 1452 (11th Cir. 1997).  "However, we review the district court's factual findings related to the imposition of sentencing enhancements only for clear error."  *Id.*; *see also United States v. Castaneda-Pozo*, 877 F.3d 1249, 1251 (11th Cir. 2017) ("The district court's factual findings are reviewed for clear error, and its application of those facts to justify a sentencing enhancement is reviewed *de novo*." (quoting *United States v. Matchett*, 802 F.3d 1185, 1191 (11th Cir. 2015))).  "We will not reverse a district court's factual finding unless we are 'left with a definite and firm

statements of the Sentencing Commission; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims.  18 U.S.C. § 3553(a)(1)-(7).

[3]  Sams, who was 37 years' old at the time of sentencing, had a criminal record dating back to his early teens, which included multiple counts of theft (two of which involved stealing a car), drug possession, and unlawful possession of a firearm.  He had been sentenced to extended periods of confinement multiple times.

conviction that a mistake has been committed.'" *Castaneda-Pozo*, 877 F.3d at 1251 (quoting *Matchett*, 802 F.3d at 1191). "[W]e may affirm 'for any reason supported by the record, even if not relied upon by the district court.'" *United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir. 2012) (quoting *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008)).

## III.    Discussion

Sams argues that throwing a gun out of a window of a moving vehicle alone does not warrant a § 3C1.2 enhancement because "driving a vehicle recklessly is barely enough for the enhancement . . . [and] [t]he gun would in no way cause the same damage, and risk of substantial harm, as a multiple car collision."[4]  In support of his position, he notes that the gun did not cause any damage to the state trooper's vehicle and he did not even have to swerve to avoid the object.  Finally, with regard to the district court's concern that the gun could have shattered the trooper's windshield, Sams asserts that "[w]indshields are fragile and get damaged all the time while on the road.  A shattered windshield in no way should cause

---

[4] Sams also argues that his actions of leaving the scene and attempting to hide in a ditch are common occurrences in interactions with law enforcement and do not warrant an enhancement for reckless endangerment.  He further argues that throwing the gun from a vehicle in no way aided or abetted, counseled, commanded, induced, procured, or willfully caused the driver's conduct during flight, as the driver made his choice to flee and persisted in reckless driving two and a half minutes before the gun was thrown out the window, and the gun had no bearing on the driver's recklessness.  Because, as explained further, we conclude that Sams's conduct in throwing the gun out of the window during the high speed chase supported the § 3C1.2 enhancement, we decline to address whether the enhancement was also warranted based on these alternative grounds.

substantial harm to a driver" and "[v]ehicles can be driven with shattered windshields, or safely stopped if the damage obstructs the view of the road."

Under U.S.S.G. § 3C1.2, a defendant is eligible for a two-level increase to his base offense level if he "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." This enhancement is applicable to a defendant based on his "own conduct and for conduct that [he] aided or abetted, counseled, commanded, induced, procured, or willfully caused." U.S.S.G. § 3C1.2, cmt. (n.5). For purposes of this guideline provision, reckless "means a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." *See id.*, cmt. (n.2) (adopting definition of "reckless" in U.S.S.G. § 2A1.4, cmt. (n.1)); *see also United States v. Washington*, 434 F.3d 1265, 1267 (11th Cir. 2006) (discussing "recklessness" for purposes of U.S.S.G. § 3C1.2). "[F]light alone is insufficient to warrant an enhancement under [§ 3C1.2]" and it is the defendant's conduct, not that of the pursuing officers, that must recklessly create the substantial risk of death or serious bodily injury to others. *United States v. Wilson*, 392 F.3d 1243, 1247 (11th Cir. 2004). However, "[§] 3C1.2 requires only that there was a substantial risk that something could have gone wrong and someone could have died or been seriously

8

injured." *Matchett*, 802 F.3d at 1198.  Thus, "we have held that conduct that could potentially harm a police officer or a third party is sufficiently reckless." *Id.* (collecting cases).

Here, the district court did not err in applying the § 3C1.2 enhancement. Sams's act of throwing a firearm out of the truck while traveling at a dangerously fast speed with police officers pursuing close behind the truck recklessly created a substantial risk of death or seriously bodily injury to the officers and anyone else that may have been on the highway.  The thrown firearm could have caused the officer to swerve off the road, into another police car, or resulted in a collision, and, had there been an accident at that rate of speed, there would have been a substantial risk of death or serious bodily injury.  Additionally, as the district court concluded the thrown firearm could have hit and shattered one of the officers' windshields which, at that speed, could also have potentially caused death or serious bodily injury.  Although Sams is correct that no harm came from his throwing the firearm out of the window, that is irrelevant.  Rather, the focus is on whether Sams's action could have *potentially* harmed the officers or another person on the highway.  *Id.*  We conclude, based on the totality of the circumstances in this case, Sams's conduct was sufficiently reckless and created a substantial risk of death or serious bodily injury to another person to support the § 3C1.2 enhancement.

Moreover, even assuming *arguendo* that the § 3C1.2 enhancement was inappropriate in this case, we conclude any error was harmless because the district court indicated that it would have imposed the same sentence regardless of the guidelines calculation, and Sams's resulting sentence was reasonable based on the 18 U.S.C. § 3553(a) factors, particularly in light of his lengthy criminal history. *See United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006) (holding that a guideline error is harmless if (1) the district court expressed that it would have imposed the same sentence, even without the erroneous calculation, and (2) the sentence is reasonable).  Accordingly, we affirm.

**AFFIRMED**.