[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11186
Non-Argument Calendar
_____

D.C. Docket No. 3:18-cr-00121-RV-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VICTOR I. CHUKWU,

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(January 4, 2021)

Before JORDAN, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Victor Chukwu was tried and convicted of conspiracy to commit wire fraud,

in violation of 18 U.S.C. §§ 1343 and 1349, and wire fraud, in violation of 18 U.S.C.

§§ 2 and 1343, for his role in a "Nigerian romance scheme." The district court then sentenced Chukwu to 22 months imprisonment on each count, to run concurrently. He now appeals both his conviction and sentence. Specifically, Chukwu appeals the district court's admission into evidence of screenshots and photographs from his cellphone depicting various financial transactions and the court's application of three sentencing enhancements: (1) a four-level enhancement based on an "intended loss" amount of $22,000, (2) a two-level enhancement based on "substantial financial hardship" of a victim, and (3) a two-level enhancement based on "a substantial part of a fraudulent scheme [being] committed from outside the United States." Upon consideration, we conclude that the district court neither abused its discretion by admitting the challenged evidence nor erred by applying the sentencing enhancements. Accordingly, we affirm.

## I.

In early March 2017, Jenny Bui discovered that her Facebook page had been hacked. Soon after that discovery, Bui began receiving messages on that account from an individual purporting to be a man named "Oscar Chris." The messages began as professions of love, but soon turned threatening when Bui did not reciprocate. "Oscar Chris" insisted that if Bui did not pay him money, her family members would be harmed. Bui eventually deposited $4,500 in a Bank of America

account in an attempt to keep her family safe. That Bank of America account belonged to Chukwu. Chukwu then transmitted the funds to a foreign bank account.

Chukwu was indicted in the Northern District of Florida on charges of conspiracy to commit wire fraud and wire fraud. Before trial, the government filed a Federal Rule of Evidence 404(b) notice, stating that it planned to introduce evidence tending to prove intent and/or absence of mistake. That evidence included "[t]he illicit/fraudulent laundering of currency through the defendant's bank accounts during 2017 and 2018, to foreign countries, as disclosed in discovery to the defense via certified bank account records." The government contended that this conduct was inextricably intertwined with the charged conduct but filed the notice "in an abundance of caution."

Chukwu filed a motion in limine challenging the admissibility of bank records and related screenshots and photographs from outside of the time period of the alleged offense conduct. He argued that the evidence was inadmissible under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice. Chukwu further argued that the government had produced "no evidence that the funds deposited into the accounts were the product of a fraudulent scheme," rendering the evidence inadmissible under Rule 404(b).

In response, the government argued that the records in question constituted uncharged acts arising out of the same series of transactions as the charged offense

3

and were inextricably intertwined with the alleged conduct charged in the indictment. Accordingly, the records' admissibility should be analyzed under the traditional Rule 401 and 403 balancing test. Alternatively, the government argued that the records and photographs from Chukwu's phone demonstrated unexplained wealth and were, therefore, admissible under Rule 404(b) to prove his involvement in a "Nigerian romance scheme." Finally, the government argued that the bank records and photographs implicated Chukwu's father in the scheme, which helped to establish the existence of a conspiracy.

The district court denied Chukwu's motion. First, it held that the bank records and related evidence were inextricably intertwined with the charged offense. Second, the evidence established that Chukwu sent other funds to his father in Nigeria just as he did with the victim's funds. Third, the evidence would likely be admissible under Rule 404(b) as proof of knowledge, intent, motive, absence of mistake, or lack of accident even if it were not inextricably intertwined with the charged conduct. Further, the court determined "that there is sufficient proof to permit the jury to find that the defendant's accounts were what the government represents; and that the probative value of the evidence is not substantially outweighed by *unfair* prejudice." The court declined to definitively rule on the evidence's admissibility under Rule 404(b), however, until, and unless, it was raised at trial.

4

At trial, Chukwu renewed his objection to the bank records. Chukwu argued that the evidence was not inextricably intertwined with the charged conduct because it was "way beyond the time that the offense ends in this case." He further contended that the case was limited to the $4,500 that the victim deposited into his account, and evidence of other funds with no proven link to fraudulent activity was irrelevant. The district court disagreed, ruling that the evidence was "very probative that there was a conspiracy and that [Chukwu] was an integral part of it because it went through four accounts in his name."

The government then preemptively argued for the admissibility of evidence extracted from Chukwu's cellphone. Specifically, the government sought to admit into evidence screenshots of bank accounts showing incoming and outgoing funds that were not reported on Chukwu's tax returns, photographs of deposit slips related to large sums shown on his bank records, screenshots of text messages in which Chukwu discussed setting up "Yankee" bank accounts, screenshots of money transfers to and from Nigeria, photographs of Chukwu, and photographs of large amounts of United States and Nigerian currency. All of this evidence was from 2017, the year in which Chukwu received the $4,500 from Bui. The government argued that the evidence was not barred by either Rule 403 or 404(b).

Chukwu responded that the probative value of the screenshots and photographs was substantially outweighed by their prejudicial impact, thus they

were inadmissible under Rule 403. The district court once again disagreed. The court stated that the evidence was probative because it was "inextricably intertwined with this particular segment," "shows the similarity of conduct," and "shows intent." The court determined that any prejudice to Chukwu did not outweigh the evidence's probative value. The district court left its order unchanged and declined again to rule on the evidence's admissibility under Rule 404(b), instead concluding that the evidence was related to the charge at hand.

Bui then testified to discovering that her Facebook had been hacked, receiving threatening messages from "Oscar Chris," and sending the $4,500 to a bank account that "Oscar Chris" directed her to. She stated that "Oscar Chris" first asked her to pay $22,000, which she insisted that she did not have. He then said that if she did not pay him all of the money that she had, he would kill her daughter and other family members and "cut [her] neck." She struck a deal with him to pay $4,500 in exchange for him not killing her daughter, and he sent her a screenshot of a California bank account where she should send the money. The government asked Bui where the $4,500 came from, and she responded that she works at a nail salon and it was all of the tip money that she had saved for her 14-year-old son to attend college.

Bui sent the $4,500 in the hope that the threats would stop, but "Oscar Chris" continued to demand more. He told her to sell her house, car, and anything else that

she had and send the proceeds to him. When she insisted that she did not have any more money to send, he again threatened to kill her family.

The jury found Chukwu guilty on both counts. Under U.S.S.G. § 2B1.1(a)(1), Chukwu's base offense level for violating 18 U.S.C. § 1343 was seven. He received three enhancements: (1) a four-level enhancement because the intended loss—$22,000—was over $15,000 and did not exceed $40,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(C); (2) a two-level enhancement because the offense resulted in substantial financial hardship to the victim due to her transferring all of her savings to Chukwu's bank account, pursuant to U.S.S.G. § 2B1.1(b)(2)(a)(iii); and (3) a two-level enhancement because a substantial part of the fraudulent scheme was committed outside the United States, pursuant to U.S.S.G. § 2B1.1(b)(10)(B). Accordingly, Chukwu's total offense level was fifteen. The probation officer determined that Chukwu's criminal history category was I, therefore, his guideline imprisonment range was 18 to 24 months.

Chukwu made three objections to the PSI that are relevant to this appeal. First, he objected to the "intended loss" of $22,000. He argued that he was not involved in the communications between "Oscar Chris" and Bui and that Bui had never mentioned the request for $22,000 prior to trial. Second, he objected to the probation officer's determination that Bui suffered "substantial financial hardship" due to paying the $4,500. He argued that the only proof that the $4,500 constituted the

7

entirety of Bui's savings for her son's education was her testimony and that "it would be important to know whether Ms. Bui and her husband had significant other funds beyond the $4,500." Third, he objected to the probation officer's determination that "a substantial part of the fraudulent scheme [was] committed from outside the United States." He argued that the only evidence to support that enhancement was the fact that an IP address possibly used by "Oscar Chris" was traced to Malaysia and that Bui's $4,500 deposit became part of a larger wire transfer to Nigeria. But, he argued, there was insufficient reliable evidence to establish that "Oscar Chris" was actually in Malaysia while communicating with Bui or that any "substantial part of the fraudulent scheme" was committed in Malaysia, Nigeria, or any other country outside of the United States.

Chukwu renewed all three objections at the sentencing hearing, and the district court overruled each. First, the district court found Bui's testimony that "Oscar Chris" initially requested $22,000 credible. It considered her omission of certain details in her initial report understandable since she is not fluent in English and found further support for her statement in the fact that she credibly testified to follow-up demands by "Oscar Chris" for her to sell her house and car. Second, the court also found Bui's testimony that the $4,500 was all of the money that she had saved for her son's education credible. And third, the district court (1) found that there was evidence of an international operation with Nigeria as the hub of

8

operations; and (2) agreed with the probation officer that, in the alternative, the two-level enhancement would still apply due to the use of sophisticated means.

The district court then sentenced Chukwu to 22 months' imprisonment for each count, to be served concurrently, and three years supervised release for each count, to be served concurrently. The court further ordered that Chukwu pay $4,500 in restitution to Bui and a $200 special monetary assessment. Chukwu filed a timely notice of appeal from both the judgment and sentence.

## II.

On appeal, Chukwu argues that the district court abused its discretion by admitting the screenshots and photographs on his cellphone and erred by applying the three sentencing enhancements. We address each issue in turn.

### A. *The district court did not abuse its discretion by admitting evidence of other financial transactions*

First, Chukwu argues that the screenshots and photographs of financial records taken from his cellphone were inadmissible under Rule 403 because they were both irrelevant and unduly prejudicial. Because the charges against him only concerned Bui's transfer of $4,500 to his account in March 2017, evidence of any other transfers to and from other accounts was irrelevant. Moreover, the government produced no evidence that those extraneous transactions were the product of illegal activity. Second, Chukwu also argues that the evidence was inadmissible under Rule

404(b) because the government failed to establish a proper purpose for introducing it.

We review rulings on the admissibility of evidence for abuse of discretion. *United States v. Shabazz*, 887 F.3d 1204, 1216 (11th Cir. 2018). "The standard for what constitutes relevant evidence is a low one." *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2003). Evidence is relevant if (1) "it has any tendency to make a fact more or less probable than it would be without the evidence" and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401. In general, relevant evidence is admissible unless otherwise provided by rule or law. Fed. R. Evid. 402. We have emphasized that a district court possesses "broad discretion to admit evidence if it has any tendency to prove or disprove a fact in issue." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006).

1.  The District Court did not Abuse its Discretion by Declining to Exclude the Evidence Under Rule 403

Under Rule 403, a district court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." However, we have stressed that Federal Rule of Evidence 403 is an extraordinary remedy which "should be used only sparingly" and that we must "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Shabazz*, 887 F.3d at 1216 (quoting *Smith*, 459 F.3d at 1295); *see also United States v. Norton*, 867 F.2d 1354, 1361

10

(11th Cir. 1989) ("The balance under the Rule, therefore, should be struck in favor of admissibility.").

Here, the district court did not abuse its discretion by admitting photographs and screenshots of bank transactions from Chukwu's cellphone into evidence. This evidence is clearly relevant under Rule 401's low bar. The government had to prove, in part, both that Chukwu was a willful participant in the conspiracy and that he acted with intent to defraud to establish his guilt on both counts. Evidence that Chukwu sent other funds to his father in Nigeria, an uncharged co-conspirator, in the same manner and in the same year as the $4,500 at issue in this case, has a tendency to make it more probable that Chukwu was a willful participant in a greater scheme to defraud. That evidence demonstrates that Chukwu had knowledge of these transactions and was an active participant in transferring large sums of money to foreign bank accounts.

As the district court recognized, all evidence carries a risk of prejudice. A district court should only, therefore, exclude relevant evidence under Rule 403 "if its probative value is *substantially* outweighed by a danger of . . . *unfair* prejudice." Fed. R. Evid. 403 (emphasis added). This evidence's probative value is in its "completing the story of the crime"—it demonstrates the greater scheme of which Bui's $4,500 transfer was only a piece and is circumstantial evidence that Chukwu was a knowing and active participant in that scheme. Even if the evidence carries a

11

risk of prejudice, that effect does not substantially outweigh the evidence's probative value.

### 2. The District Court did not Abuse its Discretion by Declining to Exclude the Evidence Under Rule 404(b)

Rule 404(b) prohibits the use of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence is admissible, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). It is well established in this Court that "evidence of criminal activity other than the crime charged is not extrinsic under Rule 404(b) if the evidence is inextricably intertwined with evidence of the charged offense." *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1210 (11th Cir. 2009) (citation omitted). Evidence is "inextricably intertwined" if it "is linked in time and circumstances with the charged crime and concerns the context, motive or setup of the crime; or forms an integral part of the crime; or is necessary to complete the story of the crime." *Id.* (citation omitted). "[I]n cases where this Court has found other acts evidence inextricably intertwined with the crimes charged, the Court has refused to find that the evidence should nonetheless be excluded as unduly prejudicial" under Rule 403. *Id.* at 1211.

12

It is similarly well established in this Court "that the government is entitled to show that a defendant experienced a sudden acquisition of large sums of money from unexplained sources in order to prove that he received substantial income and resources from the continuing criminal enterprise with which he was charged." *Shabazz*, 887 F.3d at 1217–18 (cleaned up). The government need not establish the source of that unexplained wealth so long as "the charged crime involves pecuniary gain" and the government provides "other evidence of the defendant's guilt." *Id.* at 1218 (citation omitted).

Here, the evidence is inextricably intertwined with evidence of the charged offense. The pictures showed financial transactions, many of which were linked to the bank records admitted at trial, that occurred within a year of the conduct charged in this case. They demonstrate conduct similar to the charged offense—money deposited into accounts associated with Chukwu and then transferred in large batches to foreign bank accounts, some associated with his father. They are, therefore, "linked in time and circumstances with the charged crime and concern[] the context, motive or setup of the crime" and are "necessary to complete the story of the crime." *US Infrastructure*, 576 F.3d at 1210. Accordingly, we affirm the district court's decision to admit the evidence.

*B. The district court did not err in applying the sentencing guidelines*

13

"We review questions of law arising under the Sentencing Guidelines *de novo*." *United States v. Bush*, 126 F.3d 1298, 1299 (11th Cir. 1997). Whether a specific enhancement applies to undisputed facts is such a question of law. *See United States v. Barakat*, 130 F.3d 1448, 1452 (11th Cir. 1997) (citation omitted). However, we review the district court's findings of fact underlying its determination that a sentencing enhancement applies only for clear error. *Id.*

A district court's factual finding is clearly erroneous when, after a review of the evidence, we are left with "a definite and firm conviction a mistake has been made." *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015). "The government bears the burden of establishing the facts necessary to support a sentencing enhancement by a preponderance of the evidence." *Id.* As long as the evidence has sufficient indicia of reliability, a sentencing court "may consider all relevant information, regardless of its admissibility under the rules of evidence." *United States v. Onofre-Segarra*, 126 F.3d 1308, 1310 (11th Cir. 1997). We accord substantial deference to a factfinder's credibility determination and will accept its determination unless the proffered evidence is "contrary to the laws of nature" or is "so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Maddox*, 803 F.3d 1215, 1220 (11th Cir. 2015) (quoting *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002)).

Chukwu first argues that the district court erred in applying a four-level enhancement under U.S.S.G. § 2B1.1(b)(1)(C) based on an "intended loss" of $22,000 because there was not enough evidence to support that calculation. He argues that no evidence was presented at trial that Chukwu contacted Bui and the only evidence to support the intended loss is Bui's testimony that "Oscar Chris" demanded $22,000, which is contradicted by her earlier statements.

A district court's determination of the loss amount for purposes of U.S.S.G. § 2B1.1(b)(1) is a finding of fact that we review for clear error. *See United States v. Ford*, 784 F.3d 1386, 1398 (11th Cir. 2015). The district court is required to make a reasonable estimate of the loss given the available information. *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011). The Sentencing Guidelines state that the loss attributable to the defendant is "the greater of actual loss or intended loss," and that the "intended loss" is defined as the "pecuniary harm that the defendant purposely sought to inflict." U.S.S.G. § 2B1.1, cmt. n.3(A), (A)(ii).

The district court must consider "all relevant conduct," not merely charged conduct, when calculating a defendant's sentencing guideline. *United States v. Rodriguez*, 751 F.3d 1244, 1256 (11th Cir. 2014). Relevant conduct for a member of a criminal conspiracy includes not only "all acts and omissions committed, aided, [or] abetted . . . by the defendant" but also, the acts and omissions of others that were: (1) "within the scope of," (2) "in furtherance of," and (3) "reasonably

15

foreseeable in connection with" that criminal activity. U.S.S.G. § 1B1.3(a)(1). When calculating the loss amount, then, a district court may hold a participant in a conspiracy "responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy." *Rodriguez*, 751 F.3d at 1256 (quoting *United States v. Mateos*, 623 F.3d 1350, 1370 (11th Cir. 2010)).

Here, the district court did not clearly err by determining that the intended loss amount was $22,000. Bui testified that "Oscar Chris" initially asked her to send $22,000. The district court determined that Bui's testimony was credible. We find nothing in the record proving that her testimony was "so inconsistent or improbable on its face" that we should not accept the district court's determination. *See Maddox*, 803 F.3d at 1220. That request for $22,000 is attributable to Chukwu because it was within the scope of, in furtherance of, and reasonably foreseeable in connection with the conspiracy to defraud Bui. *See* U.S.S.G. § 1B1.3(a)(1). Because an intended loss of that size warrants a four-level enhancement under Section 2B1.1(b)(1)(C)–(D), we affirm the district court's application of the intended loss amount enhancement.

Chukwu next argues that there was insufficient evidence to support a two-level enhancement for "substantial financial hardship" because that determination was based solely on Bui's testimony that the $4,500 constituted the entirety of her

savings for her son's education and no other evidence was presented to complete the picture of the family's finances. We disagree.

Section 2B1.1(b)(2)(A) of the Sentencing Guidelines provides for a two-level enhancement where the offense resulted in substantial financial hardship to one or more victims. Although the guidelines do not define "substantial financial hardship," one factor that courts shall consider in determining whether to apply the enhancement is whether the crime resulted in a victim "suffering substantial loss of a retirement, education, or other savings or investment fund." U.S.S.G. § 2B1.1 cmt. n.4(F)(iii). Relying on other circuits for guidance, we have held that a substantial financial hardship may occur in instances where a victim's pecuniary loss may appear relatively small because "[t]he same dollar harm to one victim may result in a substantial financial hardship, while for another it may be only a minor hiccup." *United States v. Castaneda-Pozo*, 877 F.3d 1249, 1252–53 (11th Cir. 2017) (quoting *United States v. Minhas*, 850 F.3d 873, 877 (7th Cir. 2017)).

Here, the district court did not clearly err by finding that the $4,500 constituted the entirety of Bui's savings account for her son's education. Bui testified to that fact, and the district court deemed her testimony credible. That determination was reasonable; Bui worked in a nail salon and testified that the $4,500 was the entirety of the tips that she had saved. She told "Oscar Chris" that she had no more money to give him. Given those facts, the district court properly concluded that the $4,500

17

constituted a substantial loss of an education fund. Such a loss may not constitute a "substantial financial hardship" for everyone, but it did for Bui who lost everything that she had saved for her son's education. *See* U.S.S.G. § 2B1.1 cmt. n.4(F)(iii); *see also Castaneda-Pozo*, 877 F.3d at 1252–53. Accordingly, we affirm the district court's imposition of the "substantial financial hardship" enhancement.

Finally, Chukwu argues that there was insufficient evidence to support the enhancement based on "a substantial part of a fraudulent scheme [being] committed from outside the United States." He contends that there was no evidence that he performed any actions outside of California. Further, evidence that money was transferred from his account to Nigeria and that "Oscar Chris" used a Malaysian IP address was insufficient to establish that a *substantial* part of the alleged scheme was committed outside of the United States.

Section 2B1.1(b)(10)(B) of the Sentencing Guidelines provides for a two-level enhancement if "a substantial part of a fraudulent scheme was committed from outside the United States." A determination that a substantial portion of a conspiracy was committed outside of the United States is a factual finding that we review for clear error. *See United States v. Singh*, 291 F.3d 756, 762 (11th Cir. 2002).

Here, the district court did not clearly err by finding that a substantial part of the conspiracy for which Chukwu was convicted occurred outside of the United States. Substantial evidence was presented at trial that funds were sent from

18

Chukwu's accounts to Nigeria. The IP address for "Oscar Chris" was traced to Malaysia. Even if Chukwu did not commit any actions outside of the United States, the evidence below clearly establishes that many of the conspiracy's acts occurred outside of the United States, and those acts were both reasonably foreseeable and taken in furtherance of the conspiracy. *See Singh*, 291 F.3d at 761–62. Under Section 2B1.1(b)(10)(B), the district court's imposition of a two-level enhancement was warranted.

## III.

For the foregoing reasons, the district court is **AFFIRMED.**