NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0500n.06

Case No. 20-1867

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Nov 02, 2021 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| PAUL PATRICK PIPER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

BEFORE:     GUY, COLE, and STRANCH, Circuit Judges.

COLE, Circuit Judge. Paul Piper pleaded guilty to one count of bank fraud in violation of 18 U.S.C. §§ 1344(a)(1) and (2), and one count of filing a false tax return in violation of 26 U.S.C. § 7206(1). Piper now appeals his 63-month sentence, arguing that the district court erred in applying a two-level enhancement for causing substantial harm to a victim under U.S.S.G. § 2B1.1(b)(2)(A)(iii) and that the district court applied the wrong standard when evaluating whether a downward departure was warranted. Because the district court did not clearly err in concluding that Piper's offense caused his victim "substantial harm," and because the district court did not err when denying Piper's departure, we affirm.

I.

Paul Piper served as the financial controller of Lake Michigan Car Ferry ("Car Ferry") for over 25 years. From at least 2007 until his employment was terminated in April 2018, Piper used his position to mask his embezzlement of over $1.7 million from his employer. On June 1, 2020, Piper pleaded guilty to one count of bank fraud in violation of 18 U.S.C. §§ 1344(a)(1) and (2), and one count of filing a false tax return in violation of 26 U.S.C. § 7206(1) pursuant to a plea agreement.

The U.S. Probation and Pretrial Services Office then prepared a Presentence Investigation Report ("PSR"), which calculated Piper's sentencing guidelines range at 63 to 78 months, based on a criminal history category I and an offense level of 26. The offense level included a two-level enhancement for causing a substantial hardship to Piper's victim. The PSR recommended applying the enhancement for four reasons. First, Piper's failure to make timely payments of payroll taxes resulted in Car Ferry having to pay substantial penalties and interest. Second, Car Ferry had to borrow substantial amounts of money from financial institutions to meet operating expenses because of the deficit introduced by Piper's theft. Third, Piper contributed to employee 401(k) plans late, resulting in extra expense because of the need to pay beneficiaries the amount of lost investment income from the late funding. And fourth, Car Ferry lost state-backed unemployment insurance because of Piper's theft, and therefore incurred increased costs associated with having to self-fund unemployment claims.

At sentencing, Piper argued that the enhancement was inapplicable because while Car Ferry experienced hardship, it was not "substantial" as contemplated by the Guidelines. The district court overruled Piper's objection. The district court emphasized that the harm to Car Ferry's credit was a motivating factor for its decision. Following Piper's embezzlement, Car Ferry's primary lender—Chemical Bank—insisted that Car Ferry consolidate "a significant

portion" of its debt to loans backed by a Small Business Administration guaranty as a condition of continuing the lending relationship. This forced Car Ferry to pay over $100,000 in loans fees and higher interest rates. Additionally, the owners were required to execute a personal guaranty of all of Car Ferry's existing debt "for the first time[.]" Finally, Chemical Bank indicated that it "was not as willing to lend additional funds to the company," and that requests for additional credit would be "met with substantially more analysis and less favorable terms than in the past, as evidenced by the new terms imposed upon the Car Ferry." The district court concluded that the harm to Car Ferry's credit and banking relationship, along with the adverse impact on its owners, the harms identified in the PSR, and the amount of money stolen from a business that was "treading water" constituted substantial harm under the Guidelines.

Piper also moved for a downward departure from the Guidelines due to his health. Piper argued that certain physical conditions—including obesity and unidentified throat issues related to his asthma, allergies, and smoking—placed him at a higher risk for contracting COVID-19 and having complications from the illness. This, in his view, warranted placement in home confinement, rather than a correctional facility which he noted "are, of course, breeding grounds for infectious diseases[.]"

The district court declined to grant a downward departure. The district court found that a term of incarceration was necessary, both for "specific deterrence" and "punishment" as to Piper, but also "general deterrence for other people who are looking at the cost of this kind of wrongdoing." *See* 18 U.S.C. §§ 3553(a)(2)(A)–(B). Although the district court found that Piper had "general health issues," it concluded that the Bureau of Prisons was "capable of addressing those things." Further, while it agreed that COVID-19 was something that "everybody is naturally concerned of," it did not agree that Piper's health conditions in conjunction with the pandemic

warranted a downward departure. Rather, he was in "the more general category of anyone who would want to avoid getting [COVID-19] if possible but who c[ould] be managed should he be exposed to it."

Piper timely filed a notice of appeal.

## II.

We will first address the application of the two-level enhancement for an offense involving a "substantial financial hardship" to one or more victims.

## A.

In reviewing a district court's application of the Sentencing Guidelines, we "accept the findings of fact of the district court unless they are clearly erroneous.'" *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008). "Clear error will be found only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Max Trucking, LLC v. Liberty Mut. Ins. Corp.*, 802 F.3d 793, 808 (6th Cir. 2015). "We review a district court's legal conclusions regarding the Sentencing Guidelines *de novo*." *Moon*, 513 F.3d at 540.

## B.

A court may increase a defendant's offense level by two if the given offense results in "substantial financial hardship to one or more victims." U.S.S.G. § 2B1.1(b)(2)(A)(iii). "Victim" means "any person who sustained any part of the actual loss determined under subsection (b)(1)," and "'[p]erson' includes individuals, corporations, [and] companies[.]" U.S.S.G. § 2B1.1, cmt. n.1. This enhancement "advises sentencing courts to consider the extent of the harm rather than merely the total number of victims of the offense (as its predecessor did) in an effort to 'place greater emphasis on the extent of harm that particular victims suffer as a result of the offense.'" *United States v. Howder*, 748 F. App'x 637, 642 (6th Cir. 2018) (quoting *United States v. Poulson*, 871 F.3d 261, 267 (3d Cir. 2017)).

When determining whether a victim's hardship was substantial, "a sentencing court may make reasonable inferences about the victims' financial circumstances and about their level of financial harm, so long as those inferences find some support in the record." *Howder*, 748 F. App'x at 644. While "substantial harm" is undefined by the plain text of the Guidelines, the application notes provide a list of non-exclusive factors to assist courts in interpreting this provision. These factors include, but are not limited to, offenses that resulted in the victim:

(i)   becoming insolvent;

(ii)   filing for bankruptcy under the Bankruptcy Code (Title 11, United States Code);

(iii) suffering substantial loss of a retirement, education, or other savings or investment fund;

(iv) making substantial changes to [their] employment, such as postponing [their] retirement plans;

(v) making substantial changes to [their] living arrangements, such as relocating to a less expensive home; and

(iv) suffering substantial harm to [their] ability to obtain credit.

U.S.S.G. § 2B1.1, cmt. n.4(F).

This enhancement is relatively new, therefore "Sixth Circuit precedent in its application is scarce[.]" *United States v. Johnson*, 830 F. App'x 153, 161 (6th Cir. 2020). However, several circuits have recognized the broad discretion given to district courts in determining whether the harm to a victim was "substantial." *See e.g.*, *Poulson*, 871 F.3d at 268; *United States v. Castaneda-Pozo*, 877 F.3d 1249, 1252–53 (11th Cir. 2017); *United States v. Minhas*, 850 F.3d 873, 877–79 (7th Cir. 2017); *United States v. Brandriet*, 840 F.3d 558, 561 (8th Cir. 2016). Importantly, "between a minimal loss or hardship . . . and a devastating loss . . . there lies a wide range in which we rely upon the judgment of the district courts, guided by the non-exhaustive list of factors in Application Note 4." *Minhas*, 850 F.3d at 878.

C.

Piper disagrees with the district court's factual interpretation of the harm incurred by Car Ferry, primarily motivated by the fact that the district court examined factors outside of those enumerated by the commentary to the Guidelines. However, the factors outlined in the application notes are not binding, nor are they exclusive. *See United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) ("[A]pplication notes are to be interpretations of, not additions to, the Guidelines themselves[.]" (quotations and emphases omitted)); U.S.S.G. § 2B1.1, cmt. n.4(F) ("the court shall consider, *among other factors . . .*" (emphasis added)). So long as the district court's inferences about Car Ferry's financial harm find some support in the record, the district court's determination "is entitled to the normal deference that applies to all facts found at sentencing." *Minhas*, 850 F.3d at 878.

Piper also argues that he should not be held responsible for financial harms tangentially related to his crime because Car Ferry was in a fragile financial state before his embezzlement. This enhancement, however, is specifically designed to hold defendants like Piper responsible for the harm they inflict on more financially insecure businesses or people because it requires a court to take into consideration the individual financial circumstances of the victims. *See Howder*, 748 F. App'x at 642. Therefore, while Piper may not be directly responsible for the state of Car Ferry's finances, the financial health of the business in conjunction with the harm caused by Piper bears directly on the applicability of the enhancement.

Because the district court relied on facts in the record to support its finding that Piper caused Car Ferry substantial harm, and because we are not left with a definite and firm conviction that a mistake has been committed, the district court's application of the sentencing enhancement is affirmed.

III.

We will now turn to the district court's refusal to implement a downward departure. While a district court's refusal to depart downward is normally not reviewable on appeal, *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008), Piper contends that this sentencing decision is reviewable under 18 U.S.C. § 3742(a)(2) because the district court incorrectly applied the Guidelines. Piper argues that the district court "only considered whether the [Bureau of Prisons] could 'handle' [his] health conditions and did not consider whether his health conditions were 'extraordinary' in light of COVID-19." Piper also contends that the district court failed to address "whether home confinement would be equally efficient and less costly," as this court requires.

Because Piper failed to object[1] to the district court's failure to depart, the denial is subject to plain error review. *See United States v. Simmons*, 587 F.3d 348, 360 (6th Cir. 2009). "Plain error is '(1) error (2) that was obvious or clear, (3) that affected [the] defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020) (quoting *United States v. Wells*, 623 F.3d 332, 337 (6th Cir. 2010)).

"[A]ge and physical condition are not prohibited considerations, but they are discouraged factors that justify a downward departure only in extraordinary situations." *United States v. Bostic*, 371 F.3d 865, 875 (6th Cir. 2004) (citing U.S.S.G. §§ 5H1.1, 5H1.4). The record reflects that the district court explicitly found that Piper's health conditions were not extraordinary, even considering COVID-19. At sentencing, the district court noted that not only could the Bureau of

---

[1] Piper contends that the denial is subject to de novo review because he raised the issue at sentencing and the district court interpreted § 5H1.4 incorrectly. Yet, once the sentencing court made its factual findings it specifically asked whether defense counsel had any legal objections, and counsel failed to object to the district court's findings. Therefore, plain error review applies.

Prisons handle Piper's health conditions despite the pandemic, but that he might even be safer in a correctional facility because "the Bureau doesn't designate people on the front end to places that have COVID outbreaks for obvious reasons, so he [was] [] likely to wind up in a place that's under control." The district court also explicitly compared Piper's health to the health of the individuals the district court had found eligible for compassionate release due to COVID-19 and concluded that Piper's health conditions did not place him at such a high risk of complications from COVID-19 that he required home confinement. Because the district court found that Piper's health conditions were not extraordinary even in light of the pandemic, it did not err, let alone plainly err, in its application of § 5H1.4.

Further, we have held that when granting a downward departure based on age or health, the district court is "require[d] . . . to consider the relative costs and efficiency of home confinement and imprisonment." *Bostic*, 371 F.3d at 875 (6th Cir. 2004) (citing U.S.S.G. §§ 5H1.1, 5H1.4). It is undisputed that the district court did not do so here. However, where no extraordinary circumstance exists, the district court is not required to examine whether home confinement is more efficient. *See* U.S.S.G. § 5H1.4 ("[I]n the case of *a seriously infirm defendant*, home detention may be as efficient as, and less costly than, imprisonment." (emphasis added)). Because Piper's health conditions were not extraordinary, the district court did not err in failing to address the costs and efficiency of home confinement.

IV.

For the foregoing reasons, we affirm Piper's 63-month sentence.